**NATIONAL LABOR RELATIONS BOARD**

v.

**BRASWELL MOTOR FREIGHT LINES.**

No. 14663.

United States Court of Appeals Fifth Circuit.

Jan. 29, 1954.

George J. Bott, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, James R. Webster, Fort Worth, Tex., Samuel M. Singer, Peter Bauer, Attys. N. L. R. B., Washington, D. C., for petitioner.

Cecil A. Morgan, Sam R. Sayers, Morgan & Shropshire, Rawlings, Sayers, Scurlock & Eidson, Fort Worth, Tex., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

As a result of its abortive efforts to secure recognition as the bargaining representative of respondent's employees at the Houston Terminal, the Teamsters Union, A. F. of L. filed with the Board a charge: that on or about May 1, 1950, respondent dominated and interfered with the formation and administration of a

Labor organization known as Union of Transportation Employees, hereafter called U.T.E., and has contributed unlawful support thereto; that respondent has refused to bargain collectively with the Teamsters Union, A. F. of L., though that organization was the representative of a majority of its employees; and that by the acts set forth in the charge, respondent has restrained and coerced the employees in the exercise of rights guaranteed in Section 7 of the Act.[1]

The general counsel sponsoring the charge, except as to the refusal to bargain with the Teamsters, and enlarging upon it in a complaint filed by him through the Regional Director, the matters raised came on for hearing and were heard by an examiner who found all the charges of the complaint well founded and made sweeping recommendations.[2]

The Board made no separate or independent rulings or findings of its own. It did, however, review the rulings made by the trial examiner at the hearing, and, finding that no prejudicial error was committed, affirm them. It did, too, upon a consideration of the examiner's report, the exceptions and briefs, and the entire record in the case, adopt his conclusions and recommendations and make its order in conformity therewith.

Here by petition to enforce the order in its entirety, it seeks an enforcement decree.

Respondent, resisting enforcement with the same vigor which has characterized its defense throughout these proceedings, urges upon us: that the examiner was biased and unfair; that the findings are without requisite evidentiary support; and that if the orders are not in all respects erroneous, they are clearly so to the extent that they proceed upon the assumption: (1) that U.T.E. is not an independent organization of working men but a company dominated union; and (2) that its members have been coerced by respondent into becoming such and having their dues to it checked off.

Because this controversy presents a struggle between an affiliated union and an independent one, which the employees have chosen as representative, and because in such controversies it has too

---

1. 29 U.S.C.A. § 157, as amended.

2. "Recommendations.

"Upon the basis of the foregoing findings of fact and conclusions of law, and the entire record in the case, the Trial Examiner recommends that Braswell Motor Freight Lines, El Paso, Texas, and its officers, agents, successors, and assigns shall:

"1. Cease and desist from:

"(a) Dominating or interfering with the administration of the Union of Transportation Employees, or the formation or administration of any other labor organization, and from contributing support to Union of Transportation Employees, or to any other labor organization, and from otherwise interfering with the representation of its employees through a labor organization of their own choosing;

"(b) Recognizing Union of Transportation Employees, or any successor thereto, as the representative of any of its employees for the purposes of dealing with the Respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of employment.

"(c) Giving effect to the collective bargaining agreement, dated February 17, 1951, or between the Respondent and Union of Transportation Employees or to any extension, renewal, or modification thereof, or any other contract or agreement between the Respondent and the said labor organization which may now be in force;

"2. Take the following affirmative action, which the Trial Examiner finds will effectuate the policies of the Act:

"(a) Withdraw all recognition from Union of Transportation Employees as the representative of any of its employees for the purposes of dealing with the Respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment or other conditions of employment, and completely disestablish said organization as such representative;

"(b) Reimburse all its employees whose initiation fees and membership dues in Union of Transportation Employees were checked off, for the amounts thus deducted from their wages since June 4, 1950. * * *"

often been the case: that the interests of the employees, for whose benefit the act [3] was passed, have been entirely overlooked and disregarded; and that the contest, though in form between the Board and the employer, is in fact a struggle for power between an affiliated union, whose claims are supported by the Board, and an independent union, chosen by a majority of the employees under circumstances which the Board finds are violative of the act; we have examined the record with the utmost care. We have, too, as carefully considered and canvassed the applicable provisions of the act, as well as the many decisions which have been, and may be, marshaled, in order to make sure that in this struggle for representation and power, we do not by our decree, entered to protect the employees, too often the forgotten men in struggles of this kind, deprive them of the rights the act confers not on unions as such but on employees as such.

■■ This examination leads us to this conclusion: that, while the evidence supports the Board's finding that the respondent did, in violation of the act, lend its support to the extent that it favored and facilitated representation of its employees by the independent, as against the affiliated, union, that is, it did favor and facilitate U.T.E.'s representation of its employees and did thereby and to that extent interfere with its employees' full freedom of choice of representatives of their own choice, the record does not at all support the finding that the employer dominated or interfered with the formation and administration of U.T.E. Neither does the record support the finding

that the employees were coerced into joining the Independent and paying dues to it. Indeed, substantially all of the members of U.T.E. testified that they had joined it of their own free will and of their own free will had authorized the check off of their dues. None of them, except one, testified or claimed the contrary, and that one merely stated without more that he had thought he had to join U.T.E. to hold his job. Everyone of those whose dues were checked off had, in accordance with the requirements of the act, requested that they be so checked. Nevertheless, for the reasons assigned in N.L.R.B. v. Parker Bros. & Co., Inc., 5 Cir., 209 F.2d 278, just decided by this court, we are of the opinion that the order requiring refund of dues was within the authority of the Board and must be enforced.

■ Because, however, we are of the opinion set out above, that the evidence does not support the finding that respondent dominated and interfered with the formation and administration of U.T.E., its order will be modified by striking from Par. 1(a) the first three lines,[4] and from Par. 2(a) the words, "and completely disestablish said organization as such representative". It will also be modified by adding to Par. 1(b) and to Par. 2(a), as already modified above, the words, "unless and until said organization shall have been certified by the N.L. R.B.". Finally, as was done in the Parker Brothers case, supra, there will be added to the order by the decree the following:

"Nothing in this decree shall authorize the Board to arbitrarily re-

3. "§ 157. Right of employees as to organization, collective bargaining, etc.

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right

may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title. As amended June 23, 1947". 29 U.S.C.A. § 157, as amended.

4. As follows:
"Dominating or interfering with the administration of the Union of Transportation Employees, or the formation or administration of any other labor organization."

fuse to certify the Independent as representative of the employees or prevent the employees from fully exercising their rights guaranteed to them by the act to choose as their own representative the Independent, or any other, or none, if that is their wish, or prevent the employer from recognizing the Independent if it is freely chosen by its employees and the Board unreasonably refuses it an opportunity by an election or otherwise to obtain certification."

As thus amended and modified, the Board's order will be enforced.