**SAGINAW FURNITURE SHOPS, INC., Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 14602.

United States Court of Appeals Seventh Circuit.

Feb. 15, 1965.

Rehearing Denied April 12, 1965.

Harold I. Stickler, Paul Stickler, Philip C. Lederer, Chicago, Ill., Stickler & Lederer, Chicago, Ill., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Leonard M. Wagman, Atty., National Labor Relations Bd., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Warren M. Davison, Joseph C. Thackery, Attys., National Labor Relations Bd., for respondent.

Before DUFFY, SCHNACKENBERG, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner Saginaw Furniture Shops, Inc. manufactures televisions and similar items of furniture. Its main office is in Chicago. Its factory is located at Saginaw Michigan, and employs about 325 persons.

On April 2, 1964, the National Labor Relations Board ordered the company to cease and desist from engaging in certain unfair labor practices and from interfering in any other manner with its employees in the exercise of rights guaranteed by section 7 of the National Labor Relations Act. The Board also ordered the reinstatement with back pay of four discharged employees. Petitioner seeks review of the order.

The trial examiner found the company had violated section 8(a) (1) of the act in numerous ways and had discharged four employees in violation of section 8(a) (3) and (1) of the act. The Board adopted the examiner's findings and affirmed his rulings. The Board's decision is reported at 146 N.L.R.B. No. 78.

The principal issues are whether the trial examiner was entitled to credit the testimony upon which he based his findings and whether substantial evidence on the whole record supports the Board's decision.

Petitioner contends that there is greater reason to accept the testimony of its witnesses than of those called by the General Counsel. If we were to decide the case de novo upon our reading of a dry record, we might be inclined to accept petitioner's version of the facts. Our role, however, is limited. Where there is a conflict in the testimony of

witnesses, the determination of credibility is peculiarly for the trial examiner as the trier of facts. Sunshine Biscuits, Inc. v. N. L. R. B., 274 F.2d 738 (7th Cir. 1960). Moreover, if the credited testimony supports conflicting inferences, the inferences drawn by the examiner must be accepted if reasonable when considered in the light of the entire record. Sunshine ·Biscuits, Inc. v. N. L. R. B., supra. The briefs and oral argument present us with two hopelessly irreconcilable versions of what took place at the Saginaw factory. Consequently we are constrained to resolve the questions before us by utilizing the norms we have just stated.

To state in detail the examiner's version of the facts and then contrast it with petitioner's version would extend our opinion to excessive length. We shall, however, undertake a brief résumé of the "facts" as gleaned from the record and the determinations of the trial examiner from credited testimony.

■ For a number of years Saginaw Woodworkers Federation, Local 1, had been the bargaining representative for the employees in the Saginaw factory. In November, 1961, District 50, United Mine Workers of America, was certified by the Board as the representative of the employees and then negotiated a one-year contract with petitioner.

Herbert J. Stalker was hired in August, 1962 as personnel director of petitioner. From the start, according to the General Counsel's evidence, Stalker initiated a program to replace District 50 by Local 1. Learning that job seeker Wiezycki and Beach were in financial distress, Stalker hired them and then covertly used them to check on the union sympathies of their fellow employees. He also requested them to assist him in getting rid of District 50. As informers they made daily visits to Stalker's office. Both reported what they learned about the union activities of their fellow workmen. Stalker asked Wiezycki what the sentiment was among the employees when Local 1 cards were being passed around by an organization committee. Wiezycki said about fifty had signed cards. Thereupon, Stalker gave Wiezycki some of the cards and asked that he get them signed and then return them to him secretly.

Testimony submitted to the hearing examiner indicated that Stalker proposed to Wiezycki that the latter attempt to get Don Stack, an employee and the president of the District 50 local, to smoke a cigarette in the washroom. This would have been contrary to company rules and would have constituted sufficient basis to discharge Stack. The examiner also credited testimony to the effect that Stalker told Wiezycki to spread the rumor that if District 50 remained the bargaining agent, the owners of the plant would lock it up. Pursuant to this plan, Stalker also told Wiezycki that he was going to have a piece of equipment packaged, crated, and placed where all could see it; that it would bear a Kentucky address; and that Wiezycki should stand by the package and tell the employees "there goes the first piece."

The foregoing is only a partial account of Stalker's efforts to replace District 50 by Local 1 and of the underhanded methods used in trying to accomplish this. There is no doubt that the finding of these facts depended largely on the testimony of Wiezycki. Although Wiezycki's testimony was disputed by Stalker, the examiner credited Wiezycki's version of the facts. After examining the record we cannot say that the examiner's credibility determinations were unauthorized.

■ The Board found that petitioner discharged employees Nieman, Ecker, Burnell, and Wiezycki in violation of section 8(a) (3) and (1) of the act because of their activities on behalf of District 50. Again, it would unduly extend our discussion to state in detail the diametrically opposed versions of the activities of these employees which led to their discharges. Suffice it to say that we are satisfied on the whole record that the credited testimony heard by the examiner was sufficient and substantial to warrant a conclusion that employees Ecker and

Nieman were discriminatorily discharged because of their activities on behalf of District 50 and that the ostensible reason advanced by Stalker, namely tardiness and absenteeism, was simply a pretext for the company action. Again, the findings depended upon the examiner's credibility determinations which we are constrained not to disturb.

Employee Burnell was discharged after working only about 30 days. Stalker testified that he told Burnell that he would have a sixty-day probation period during which time a decision would be made as to whether to continue Burnell in his employment. From the beginning, Burnell made no effort to conceal the fact that he was a District 50 adherent. Following Burnell's discharge, Stalker told Wiezycki "we took care of Bob like we will take care of some of the other people that are trying to organize District 50 in our plant." Although petitioner contended that this employee was discharged for unsatisfactory work, the testimony credited by the examiner shows that although there was evidence of carelessness on the part of Burnell, this was merely a pretext for the company's action in discharging him.

The trial examiner determined that Wiezycki's discharge was a reprisal for switching his allegiance from Local 1 to District 50 and for a statement to the Board outlining the underhanded activities of Stalker. Petitioner contends that the real reason for his discharge was his insubordination and refusal to work at his assigned job. The company produced evidence to show that before his discharge Wiezycki had done faulty work and had made exaggerated facial gestures when he saw the company president. Subsequent to this behavior, president Gaines directed that Wiezycki be transferred to another department. The Board adopted the trial examiner's finding that the president's action in this regard was not improperly motivated. Upon transfer, Wiezycki was assigned to work on a press in the veneer room. After about thirty minutes of this work, Wiezycki left it and reported ill to the nurse's office. Although Wiezycki complained of the new job and expressed a fear that it was not good for his health, both his personal physician and the company doctor reported that the work would not be harmful to him. Although petitioner claims that it was this attitude which occasioned Wiezycki's discharge, the examiner found otherwise. In his decision he said:

> "It is inconceivable on this record that had Stalker had this veneer room incident involving Wiezycki to pass upon when Wiezycki was following Stalker's bidding in union affairs, that Stalker would have interpreted Wiezycki's attitude that morning as a refusal to work. Rather he would have borne with Wiezycki, would have tried to help him, would have given him time off to recover and possibly would have tried to find him another assignment. Upon the entire record considered as a whole I find that Stalker interpreted Wiezycki's behavior as a refusal to work and discharged him for this alleged refusal in reprisal against Wiezycki because Wiezycki had changed allegiance from Local 1 to District 50, because Stalker was aware this switch would be costly to Stalker's efforts to oust District 50 and get Local 1 back in, and in order to discourage further membership in and activity on behalf of District 50."

Upon a review of the record, once again we are constrained not to disturb the examiner's conclusion.

In the exercise of our limited function of determining whether there was substantial evidence on the whole record to support the Board's decision, we are impelled to hold that the evidence here meets this standard.

█  Finally, we turn to petitioner's contention that many of the Board's findings and conclusions cannot be allowed to stand since they were based in substantial part upon evidence improperly admitted in support of a withdrawn

section 8(a) (2) charge. The record, however, shows that the charges of section 8(a) (1) and section 8(a) (2) violations were separate and not that the charge of a section 8(a) (1) violation was simply derivative of the section 8(a) (2) charge. Therefore, section 102.9 of the Board's Rules and Regulations, requiring dismissal of any complaint based on charges which have been withdrawn, is inapplicable. The section 8(a) (1) charges were never withdrawn, and thus the findings and conclusions of violations of this section of the act were proper.

The petition for review is denied and the Board's order will be enforced.