**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BEDFORD-NUGENT CORPORATION, Respondent.**

**No. 15875.**

United States Court of Appeals Seventh Circuit.

June 2, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert A. Giannasi, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Elliott Moore, Atty., National Labor Relations Bd., Washington, D. C., for petitioner.

Harry P. Dees, Joseph A. Yocum, Arthur R. Donovan, Evansville, Ind., for respondent, Kahn, Dees, Donovan & Kahn, Evansville, Ind., of counsel.

Before CASTLE and FAIRCHILD, Circuit Judges, and MAJOR, Senior Circuit Judge.

CASTLE, Circuit Judge.

This case is before the Court upon the petition of the National Labor Relations Board to enforce an order of the Board issued against the respondent, Bedford-Nugent Corporation, on February 25, 1965. The Board's decision and order are reported at 151 NLRB 216.

The Board found that Bedford-Nugent violated Section 8(a) (3) and (1) of the National Labor Relations Act, as amended, by discriminatorily selecting twenty-one pro-union employees for layoff between June 25 and July 6, 1962. By its order the Board requires the company to make these individuals whole for any loss of pay they may have suffered by reason of the discrimination against them, from the date of their layoffs until the date of the company's cessation of business, July 31, 1962.

In its reported decision and order, the Board approves the findings, conclusions and recommendations of the hearing examiner, and adopts them as its own.

Bedford-Nugent's opposition to the enforcement petition is grounded on its contention that the Board's position that "[t]he only discernible pattern in the layoffs was the union affiliation of those selected" is not supported by substantial evidence on the record considered as a whole and in the light of uncontroverted evidence which opposes the Board's view.

We have carefully examined the record, and appraising it on the basis of such controlling standard, as we must,

(Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Audio Industries, Inc., 7 Cir., 313 F.2d 858) we find no basis for upsetting the findings and conclusions adopted by the Board.

The layoffs occurred after picketing of the company's premises by union [1] adherents had been resumed on June 25, 1962, following a week-long strike. During the first week of picketing, the company laid off 19 employees, and by July 6, 1962, it had laid off 2 more. All had been members of the union, which, since September of 1961 had been engaged in organizational efforts. All had participated in a September 1961 strike, and many had engaged in earlier picketing during April 1962. Of the 25 unit employees who remained on the company's payroll as of July 30, 1962, only 1 was an adherent of the union. During July, some 18 of the approximately 25 unit employees remaining on the payroll worked regularly, many accumulating substantial amounts of overtime. Aside from the 1 union adherent, the unit employees who had not been laid off were either not specifically identified with the union or were former members who had repudiated the union.

Shortly after the June picketing began, the company vice-president, Nugent, made statements to supervisory personnel that "he was going to close down" and that "he wasn't going to have the union telling him what to do". In April 1962, he had told a company supervisor that "he would do anything he could to get around the union". After the June picketing began a company superintendent, in a conversation with employees, made the statement that the company would have no trouble if it "got rid of" all those employees who participated in union activity, and he advised another employee of Nugent's intent to close down his business before having a union.

Company activities during the 1961 organizational efforts were found to constitute unfair labor practices in Board proceedings enforced in N. L. R. B. v. Bedford-Nugent Corp., 7 Cir., 317 F.2d 861.

At the end of July 1962, Bedford-Nugent sold its business. In this connection the Board found that Bedford-Nugent has permanently gone out of business and has no plants or employees. It also found that the July 31, 1962 cessation of business and close down of sand and gravel operations by Bedford-Nugent was for reasons which were not violative of the Act, and that the employment relationship of all employees, including the discriminatees, was validly terminated on that date. Backpay is to be limited to the period from the date of layoff to July 31, 1962, under the terms of the Board's order.

The company urges that there is evidence which supports a conclusion that the picketing which commenced on June 25, 1962, so curtailed the company's production ability that it had an economic justification for the layoffs. But this argument is unconvincing. Burk Brothers v. N. L. R. B., 3 Cir., 117 F.2d 686. The layoffs began and were completed shortly after the picketing commenced and well in advance of any substantial effect it may have had on sales. Moreover, the union adherents were continued on layoff, while non-union employees worked substantial overtime. In any event, the possibility that some layoffs may have been economically justified is no defense for the selection of employees for layoff on the basis of union adherence or affiliation. N. L. R. B. v. Deena Products, 7 Cir., 195 F.2d 330, 335.

Here the openly expressed hostility of the company to union organization of its employees, the unfair labor practice history of the company, and the disproportionately large number of known union adherents laid off compared with the number of non-union adherents retained, combine to warrant the conclusion that the layoffs were discriminatorily motivated. National Labor Relations Board v. Shedd-Brown Mfg. Co., 7 Cir., 213 F.2d

---

[1]. Local 215, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

163, 174; N. L. R. B. v. American Casting Service, Inc., 7 Cir., 365 F.2d 168, 172. The Board was justified in relying on the evidence of discrimination presented on the record as a whole and was not required to deny relief because there was no direct evidence of specific intent as to the layoff of each employee involved.

On consideration of the briefs, oral argument, the reported decision and order, and the record as a whole, we hold that there is substantial evidence to support the findings of the Board and that the Board applied the correct legal criteria in arriving at its conclusions with respect to the layoffs involved.

In view of the fact that the Board has found that Bedford-Nugent "has permanently gone out of business and has no plants or employees" we are of the opinion that the "cease and desist" portions of the Board's order are singularly inappropriate and without foundation. Accordingly, enforcement of the Board's order is limited to its affirmative direction that Bedford-Nugent make the individuals named in the order whole for any loss of pay suffered by reason of discriminatory layoff.

Enforcement ordered, in part.