392 F.2d 1
 TEAMSTERS LOCAL UNIONS, 745, 47, 886, 523, 270, 5, 568, 667
and 891, Appellants,
v.
BRASWELL MOTOR FREIGHT LINES, INC., Appellee.
 No. 24099.
 United States Court of Appeals Fifth Circuit.
 March 25, 1968, Opinion Modified June 28, 1968, See 395 F.2d
655.
 
 L. N. D. Wells, Jr., Mullinax, Wells, Mauzy, Levy & Richards, Dallas, Tex., for appellants.
 T. S. Christopher, Fort Worth, Tex., Donald Lee Cotton, El Paso, Tex., Allen P. Schoolfield, Jr., Dallas, Tex., Christopher & Bailey, Fort Worth, Tex., for appellee.
 Before BELL, GODBOLD and DYER, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 This is a suit brought by the appellants, nine Teamsters local unions, under 301 of the Labor Management Relations Act, 29 U.S.C.A. 185, seeking to enforce an award of an arbitral body provided for by the National Master Freight Agreement ('the Agreement'), a collective bargaining agreement to which they and the appellee are parties.[1]
 
 
 2
 The appellee, Braswell Motor Freight Lines, Inc., ('Braswell') is a common Carrier motor freight line. The portion of its operation between El Paso and Los Angeles is known as the Western Division. Since 1949 Braswell has had a series of labor contracts with Teamsters locals not parties to this suit covering 90 employees in the Western Division.
 
 
 3
 The Agreement contains provisions making it applicable to subsequently acquired operations of the employer. Braswell acquired through merger with a wholly owned subsidiary (Braswell Freight Lines, Inc., hereinafter 'BFL') an additional operation (the 'BFL operation') operated from Dallas-Ft. Worth to Oklahoma City and Tulsa and east to Memphis, Jackson and New Orleans. The appellant locals are bargaining agents for all employees in the BFL operation. These locals never have had a contract with Braswell in the Western Division nor in the Texas Division (El Paso to Dallas), which is unorganized.
 
 
 4
 An arbitration proceeding was called for under provisions of the Agreement relating to interpretation of the Agreement, and was held. Braswell did not participate in the arbitration on the merits of the controversy. The arbitral body decided Braswell was required to apply the contract to the appellant locals. Braswell declined and the locals sued. The district judge concluded that Braswell was a party to the Agreement only with respect to its employee bargaining units in its Western Division, and, treating that as dispositive of the case, granted summary judgment to Braswell. We reverse and direct that summary judgment be entered for the appellants.
 
 
 5
 * In July, 1953, appellee executed a power of attorney to Motor Truck Association of California as bargaining agent. Pursuant thereto the Association entered into the Western States Area Master Freight Agreement to extend from July 1, 1961 to June 30, 1964, Braswell thereby becoming a party thereto. This agreement contained express recognition of the Teamsters' ambition to obtain a uniform nationwide agreement in the future, and it bound the employers, on written notice, to negotiate toward such an agreement:
 
 ARTICLE 26. NATIONAL AGREEMENTS
 
 6
 The parties to this Agreement accept the principle of a National Over-the-Road Agreement and a National Pick-up and Delivery and City Cartage Agreement. Accordingly, the Employers and the Unions which are parties to this Agreement shall, on written notice from the Union at least ninety (90) days before the termination date of this Agreement, enter into negotiations for the purpose of negotiating such National Agreements. However, nothing herein contained shall be construed as requiring any party hereto to be committed to a policy of complete uniformity in all matters which are covered by such National Agreements.
 
 
 7
 In 1963 Teamsters unions over the country gave notice to employers of their desire to terminate area contracts then in effect and negotiate a nationwide contract. Industry representatives throughout the United States agreed that a national association should be formed to bargain with the Teamsters on a national basis. The employers' negotiating group, Trucking Employers, Inc., was formed.
 
 
 8
 The unions sent a letter notice to Braswell in September, 1963 notifying it of the unions' 'desire to negotiate changes or revisions in the Western States Area Master Freight Agreement * * * and to enter into a National Agreement as provided in Articles 26, 27 and 36 of the Area Master Agreement.'
 
 
 9
 The California Trucking Association (the new name for the Motor Truck Association of California) sent Braswell notice of the union demands for reopening the contract, called attention to Article 26 of the Western States Agreement, and said:
 
 
 10
 'Authorization To Represent' forms for national negotiations are enclosed herewith covering your operations under the Western Area Over-the-Road Single Man and Sleeper Cab Supplement, the Western States Area Pickup & Delivery, Local Cartage & Dock Workers Supplement, or both, depending on authority given CTA under your present labor power of attorney. It is necessary that we receive the executed 'Authorization' at the earliest possible date as we will have to advise the Union Negotiating Committee as to the companies who are represented.
 
 
 11
 If for any reason your company does not wish to execute the 'Authorization To Represent,' you should advise us immediately and cancel your present labor power of attorney. Otherwise, you will be included in the bargaining unit and bound by the results of the national negotiation but without being represented.
 
 
 12
 If you sign the enclosed 'Authorization' it will not be necessary for you to take any other action or to acknowledge the Union's reopening notices.
 
 
 13
 Subsequent letters to Braswell from the Association reiterated the contents of the above-quoted second paragraph and advised Braswell of steps that should be taken in the national negotiations. Braswell then executed and sent to the Association this Authorization:
 
 
 14
 Company Authorization to Represent.
 
 
 15
 The undersigned, party to Western States Area Master Freight Agreement and Western States Area Over-the-Road Single Man and Sleeper Cab Supplemental Agreement, which agreements are in effect through June 30, 1964, does hereby authorize the California Trucking Association and/or any other trucking employer group or committee designated by the California Trucking Association to represent the undersigned in collective bargaining negotiations incident to the provisions of the above-named contracts and pursuant to reopening notices given under Articles 26, 27 and 36 of the Western States Area Master Freight Agreement.
 
 
 16
 This authorization shall continue in full force and effect until written revocation hereof is made by Certified Mail to California Trucking Association at 3301 South Grand Avenue, Los Angeles 7, California.[2]
 
 
 17
 The appellant locals executed powers of attorney to the union negotiating committee to represent them in the bargaining on the national contract, and they are parties to the Agreement by reason thereof.
 
 
 18
 Subsequently the employers, negotiating through Trucking Employers, Inc., and the unions arrived at the National Master Freight Agreement, effective from February 1, 1964 to March 31, 1967. California Trucking Association was one of the employer groups on whose behalf Trucking Employers, Inc., acted. The Agreement established a national single multi-employer unit of employees.
 
 
 19
 Article 1, 1, defining Parties to the Agreement, provides 'The signatory Associations enter into this Agreement and Supplemental Agreements on behalf of their members under and as limited by their authorizations.' The Agreement also contained the following provision:
 
 
 20
 This provision shall apply to all present and subsequently acquired operations and terminals of the Employer. The provisions of this Agreement shall apply to all accretions to the bargaining unit including but not limited to newly established or acquired terminals, consolidations of terminals, etc.
 
 
 21
 (Art. 3, 1(a).)
 
 
 22
 Braswell recognizes the Agreement has been binding on it since execution on regard to the employee units in its Western Division.[3]
 
 
 23
 The BFL operation came into the picture in the following way. On July 1, 1957 appellee acquired the stock of D.C. Hall Transportation Company and operated it as a separate corporation under the name Braswell Freight Lines, Inc. (BFL). The corporate entity BFL was not a party to negotiation of the Agreement. Negotiation of the Agreement Began in November, 1963, concluded in January, 1964, and the Agreement was ratified in February, 1964. Braswell Freight Lines, Inc., was merged with appellee on July 1, 1964.
 
 
 24
 Beginning in 1950 or earlier BFL, and its predecessor Hall, were under collective bargaining contracts with the appellant Teamsters locals. In 1961 BFL gave notice of cancellation of the contracts and filed a petition with the NLRB to have appellants decertified on the ground that they no longer had majority status. BFL withdrew the NLRB petition and unsuccessful bargaining followed. Appellants struck BFL in April, 1962; as of January 25, 1965 the strike was still in progress.[4]
 
 
 25
 After the merger appellants took the position that the BFL operations were covered by the Agreement by reason of the above-quoted provisions of Art. 3, 1. Braswell disputed this. Appellants, pursuant to the grievance procedure of Art. 8 of the Agreement, filed with the National Grievance Committee, composed of five employer and five employee representatives, a 'Request for Interpretation of National Master Freight Agreement.'
 
 
 26
 Braswell filed a special appearance before the Committee saying:
 
 
 27
 Braswell Motor Freight Lines, Inc. has been advised of a request for interpretation of National Master Freight Agreement filed by Murray W. Miller, Chairman and Area Director of the Southern Conference of Teamsters. Braswell Motor Freight Lines, Inc. makes this special and limited appearance in this proceeding for the sole and only purpose of challenging the jurisdiction of the Committee to act, in that all matters outlined and contained in the Southern Conference request for interpretation of National Master Freight Agreement even the matter of employees representation are by statute within the exclusive jurisdiction of the National Labor Relations Board and are now pending before the Board in Case No. 16-CA-1648, and therefore such matters are not properly before this tribunal.[5] A letter from Braswell, forwarding a copy of the special appearance, reiterated its objection 'to any consideration on the merits of this agreement due to the sole and exclusive jurisdiction of the National Labor Relations Board over the subject matter of this request for interpretation.'
 
 
 28
 Beyond filing the special appearance Braswell did not participate in the proceedings before the Committee. The Committee reached the merits of the request for interpretation and unanimously determined that the intent, purpose and meaning of the Agreement required Braswell to apply the Agreement to that part of its merged operation which had been the BFL operation.
 
 
 29
 Article 8(a)(2) of the Agreement provides, 'If the National Grievance Committee resolves the dispute by a majority vote of those present and voting, such decision shall be final and binding upon the parties.'
 
 
 30
 The appellant locals filed suit, characterizing the action as for violation of a collective bargaining agreement, alleging refusal by Braswell to apply the Agreement to the BFL part of its operation and refusal to comply with the Committee decision.
 
 
 31
 The district court denied appellants' motion for summary judgment and granted the motion of appellee. The court filed extensive findings and conclusions, but the crux is that the only power of attorney giving the Association power to bind Braswell at the time of negotiation of the Agreement was the 1953 power, that the only effect of the 1963 Authorization was to give the Association power to delegate to a subagent, (Trucking Employers, Inc.), the authority given the Association by the 1953 power. Thus the court reasoned, Braswell was bound to the Agreement only insofar as the 1953 power authorized the Association to bind Braswell, which was only as to its Western Division, so that there was no contractual relationship between Braswell and the appellant locals.
 
 
 32
 Whether a particular controversy arising under a collective bargaining agreement is subject to arbitration is usually a matter to be determined by the courts in either a suit to compel arbitration or to enforce an arbitration award. E.g., United Aircraft Corp. v. Lodge 971, International Ass'n of Machinists, 360 F.2d 150 (5th Cir. 1966).[6] If under the agreement the decision of the arbitrator is final and binding on the parties, a court in a suit to enforce the award may not weigh the merits of the questions. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Where no material issues forcement of an award, summary judgment of an award summary judgment is proper. Fontainebleau Hotel Corp. v. Hotel Employees' Union, Local 255, 328 F.2d 310, 311 (5th Cir. 1964).
 
 
 33
 The 'trilogy cases'[7] and their successors in this circuit[8] require that settlement of industrial disputes by arbitral machinery chosen by the parties be given the the fullest play.
 
 
 34
 The function of the Court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. * * * The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.
 
 
 35
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-568, 80 S.Ct. 1343, 4 L.Ed.2d 1403, 1407 (1960). 'It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of a contract, the courts have no business overruling him because their interpretation of the contract is different from his.' United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960). 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960).
 
 
 36
 The district court treated as disposing of the case its conclusion that the authority Braswell granted to contract was only as to units in its Western Division, so that the Agreement, as and when negotiated, established at that time no employer-employee collective bargaining relationship between Braswell and the BFL locals. But, applying the above established principles of law to this case, the district court's conclusion does not answer the question of whether employees serving an operation or terminal subsequently acquired or established are to be brought within the Agreement only if their bargaining agent is one of the Western Division locals already under contract. The Agreement contemplates that acquisition or establishment of some terminals and operations will extend the coverage of the Agreement. Without our assigning weight to any of them, there are many facts and circumstances that could aid in determining whether the Agreement means what Braswell concludes it means or what the BFL locals conclude it means-- many terms of the Agreement itself, the history of industrial strife involving the BFL locals and J. V. Braswell and both Braswell companies, the recognized intent of the Teamsters to achieve a multi-employer unit, the expressed intent that the Agreement apply to some newly acquired facilities, the fact that the BFL locals are themselves parties signatory to the Agreement, the traditional meanings of 'bargaining unit' and 'accretion.' We cannot '(say) with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' United Steelworkers of America, supra. We hold that the dispute was a matter of interpretation under Article 8 and an arbitrable issue. It was peculiarly susceptible of decision by arbitration among the parties who are familiar with the industry, with the history of labor relations in the segment of the industry occupied by Braswell (and its subsidiary), and with the negotiation of the Agreement. It was the issue for decision of which the interpretive procedure was invoked and which the National Grievance Committee (made up an equal number of employer and union members) met to hear and unanimously decided. The agreement of the parties that the award was final must be given effect.[9] Braswell could make an argument that the strife with BFL locals was evidentiary of its intent that the acquired terminal provisions were to be limited to terminals whose employees already were represented by the Western Division locals. But this is an argument on the merits of the arbitrable issue, properly to be made before the arbitral body and not there made. If made, it would come too late in this court.
 
 
 37
 No different result is called for by reason of the Agreement's not containing the specific word 'arbitration.' The interpretive procedure is the means chosen by the parties and is to be given full play. United Steelworkers of America v. American Mfg. Co., supra.9A
 
 II
 
 38
 While what we have said is dispositive of the case we point out that we do not agree with the district court's conclusion that the Authorization itself forever limited Braswell's participation in the Agreement to its Western Division. We do not spell out the evidence in detail. But the Authorization does not have by its face, free of ambiguity, the meaning the district court ascribed to it. We are inclined to the view that on its face it means just the reverse, that the phrase 'to represent the undersigned in collective bargaining negotiations incident to the provisions of the above named contracts and pursuant to reopening notices given under Articles 26, 27 and 36 of the Western States Area Master Freight Agreement' is not a limitation on bargaining authority but a specific incorporation of the provisions of Article 26, 27 and 36 which committed Braswell to national negotiations and a single unit.
 
 
 39
 We are hard put to find any ambiguity. But if ambiguity there be the fog burns away early and quickly in the light of the past history, the correspondence of the Association with Braswell and the plain import of what bargaining for a National Agreement was all about.[10] In reaching this conclusion we apply federal law and the precepts of national policy in the labor field, not state law relating to principal and agent in commercial transactions.[11]
 
 Under that law:
 
 40
 The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate. * * * The collective agreement covers the whole employment relationship. It calls into being a new common law-- the common law of a particular industry * * *. A collective bargaining agreement is an effort to erect a system of industrial self government. * * *
 
 
 41
 United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 578-580, 80 S.Ct. at 1351, 4 L.Ed.2d at 1415-1416. An industry 'has its own customs and its own vocabulary, and lives according to rules of its own making.' Dallas Typographical Union v. A. H. Belo Corp., 372 F.2d 577, 579 n. 4 (5th Cir. 1967).
 
 III
 
 42
 It is not the function of the courts to weigh the merits of the decision of the arbitral body on an arbitrable issue which the parties agreed be final. Neither the arbitrability of the issue nor the finality of the body's decision is watered down by Braswell's election to stay away from the arbitration, for arbitration agreements cannot thus be frustrated. There being no material disputed issues of fact the appellants are entitled to the summary judgment for which they asked.
 
 
 43
 Reversed and remanded to the district court for entry of summary judgment for the appellants and for such proceedings thereafter as are appropriate.
 
 
 
 [1]
 For earlier appeal in this case on a procedural matter, see Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600 (5th Cir. 1966)
 
 
 [2]
 This Authorization related to Braswell's agreement with its over-the-road employees. A second Authorization of the same date is the same except that it referenced Braswell's Agreement with local cartage employees
 
 
 [3]
 Braswell's analysis is that it is bound by the Agreement only to the limited extent of employee bargaining units already under contract to it, a limitation in terms of units and not of geography. Thus, even as to a subsequently acquired terminal or operation in the Western Division Braswell would have to contend that the Agreement is not applicable unless the bargaining unit for the affected employees was one of the locals under contract when the Agreement was made (four as Los Angeles, two at Phoenix, one at Tucson, one at El Paso.)
 
 
 [4]
 For some of the history of relations between the appellant locals and BFL, see: Braswell Motor Freight Lines, Inc., 154 NLRB 101 (1965) reconsidering 141 NLRB 1154 (1963), enforced, Teamsters Local Unions, 745, 47, 886 etc. v. NLRB, 125 U.S.App.D.C. 204, 370 F.2d 226 (1966)
 
 
 [5]
 Case 16-CA-1648 is that referred to in footnote 4, supra. In that case, on July 30, 1965 the full National Labor Relations Board found there had been refusal to bargain in good faith with the appellant locals. The Local Trial Examiner (see 141 NLRB 1154) had treated Braswell, BFL, and J. V. Braswell individually as a single employer, system and enterprise for NLRB purposes, by reason of common ownership and control, the degree of integration of their operations, common officers and directors and the final authority of J. V. Braswell on labor matters. In its decision (154 NLRB 101) the Board treated the same parties as a single enterprise
 
 
 [6]
 The parties may agree that the arbitrator may himself finally determine arbitrability, Metal Products Workers Union, Local 1645 v. Torrington Co., 358 F.2d 103 (2d Cir. 1966), but it is not contended that any such provision of the Agreement puts arbitrability beyond judicial review in this case
 
 
 [7]
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)
 
 
 [8]
 E.g., Marble Products Co. v. Local 155, United Stone and Allied Products Workers, 335 F.2d 468, 470 n. 2 (5th Cir. 1964); Local Union No. 787, International Union of Electrical, Radio and Machine Workers v. Collins Radio Co., 317 F.2d 214 (5th Cir. 1963)
 
 
 [9]
 It is not without significance that when Braswell attacked the jurisdiction of the Grievance Committee by 'special appearance' it did not raise the issue now made central to the case. We do not mean by this that the Committee's determination of what is an arbitrable issue is in this case beyond judicial review because Braswell did not file a 'plea to the jurisdiction' of the Committee asserting the particular ground now asserted or because Braswell did not make a 'general appearance' and participate. All we say is that as an evidentiary matter, to be considered by us in determining whether the issue was an arbitrable one, we find it significant that the sole contention made before the arbitral body was that the NLRB had exclusive jurisdiction
 9A Nor is a different result called for by reason of the provisions of Article 8(d) allowing the union to strike in case of 'deadlock, default or failure to comply with majority decisions.' The default and failure to comply referred to plainly are those of the company. Arbitration decisions reached (as opposed to deadlock situations) are final and binding. Article 8(d) does not make them any less so by allowing the union to strike if the company defaults or fails to comply with a decision reached.
 
 
 [10]
 Also it seems to us beyond question that the phrase in the Association's letter to Braswell, 'depending on authority given CTA under your present labor power of attorney' is a reference to the local cartage contract, the over-the-road contract, 'or both, depending (etc.).' Some employers had given powers of attorney for local contracts, some for road contracts, some for both. The employers' negotiating agency notified the union negotiators what employers it represented and for what contracts
 
 
 [11]
 Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Avco Corp. v. Aero Lodge No. 735, IAM, 376 F.2d 337 (6th Cir. 1967)