**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BRASWELL MOTOR FREIGHT LINES, INC., Respondent.**

No. 72-1444.

United States Court of Appeals, Seventh Circuit.

Argued March 1, 1973.

Decided Oct. 4, 1973.

Rehearing Denied Nov. 15, 1973.

Hugh M. Smith, Ronald R. Slaughter, Dallas, Tex., for respondent.

Before FAIRCHILD and STEVENS, Circuit Judges, and CAMPBELL,\* Senior District Judge.

WILLIAM J. CAMPBELL, Senior District Judge.

The Board has petitioned for enforcement of its order which found that the respondent violated Sections 8(a)(3) and (1) of the National Labor Relations Act by discriminatorily laying off nine employees from its Atlanta, Georgia plant and by discriminatorily discharging an employee, Ike Singletary, from its plant in Jackson, Mississippi.[1] The issues before this court are whether there is substantial evidence in the record as a whole to support the Board's findings, and whether the respondent's conduct at its Atlanta and Jackson plants was properly before the Board.

The Company is engaged in the interstate motor truck transportation over a wide geographical area. It has trucking facilities in Chicago, Illinois, in Atlanta, Georgia, as well as in Jackson, Mississippi. It also has large operations in the state of Texas. Its President and General Manager, J. V. Braswell, owns 99% of the Company's outstanding shares of stock.

Since the 1950s, the Company has engaged in an ongoing battle with various locals of the International Brotherhood of Teamsters over the organization and operation of the Company's facilities.[2] It is fair to say that the Com-

Peter G. Nash, Gen. Counsel, William L. Corbett, Atty., NLRB, Washington, D. C., for petitioner.

---

\* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. The Board also determined that the company violated Sections 8(a)(1), (3) and (5) by engaging in similar conduct at its Chicago, Illinois terminal, and ordered the company to cease and desist from such conduct and to reinstate employees discriminatorily laid off. The respondent has stipulated that it will not contest the portion of the Board's order pertaining to the Chicago violations.

2. See, NLRB v. Braswell Motor Freight Lines, 209 F.2d 622 (5th Cir. 1954), 213 F.2d 208 (5th Cir. 1954), 220 F.2d 362 (5th Cir. 1955); Braswell Motor Freight Lines, Inc. v. NLRB, 125 U.S.App.D.C. 204, 370 F.2d 226 (1966); Teamsters Local Unions v. Braswell Motor Freight Lines, 392 F.2d 1 (5th Cir. 1968), 395 F.2d 655 (5th Cir. 1968), 428 F.2d 1371 (5th Cir. 1970), cert. denied, 401 U.S. 937, 91 S.Ct. 926, 28 L.Ed.2d 217 (1971); Local Freight Drivers v. Braswell Motor Freight Lines, 422 F.2d 109 (9th Cir. 1970), cert.

pany's posture throughout this history has been one of resistance to organizational efforts by the Union and its various locals. The record in this case is no different. It contains evidence of direct statements of the company president and his management assistants which support the findings of the Board that the layoffs and discharge were discriminatorily motivated by reason of the employees' union activities. Typical of these statements is a remark of the company president to the director of its Chicago terminal concerning the problem in Chicago. J. V. Braswell stated "I will tell you one thing, if those sons-of-bitches up there go union I will shut that terminal down because if they are allowed to go union, every terminal in the system will get the idea that they can do the same thing." Although the incidents at the Chicago terminal are not being challenged by the respondent in this court, similar incidents occurred at the Atlanta and Jackson plants. For example, when Braswell learned that the Atlanta employees had signed union authorization cards he immediately instructed Cahill, the Chicago terminal director, to go to Atlanta, hire an independent cartage company to conduct the respondent's operations in Atlanta, and then to fire "every son-of-a-bitch in Atlanta." At a later point in time, when Cahill informed Braswell that the situation in Atlanta was "bad", Braswell responded "well, at least I got rid of a bunch of union bastards in Chicago." With respect to the Jackson facility, when Braswell learned that employee Ike Singletary had previously walked a union picket line at the Jackson plant, he instructed that Singletary was to be fired.

The position of the respondent is that the layoffs in Atlanta, Georgia, were justified by the economic situation prevailing at the time. Concerning this purported justification, the testimony of

the witnesses is conflicting. Where this is so, the determination of the witness' credibility lies peculiarly within the province of the trial examiner as the trier of fact. Saginaw Furniture Shops Inc. v. NLRB, 343 F.2d 515, 516–517 (7th Cir. 1965); NLRB v. National Food Stores Inc., 332 F.2d 249, 251 (7th Cir. 1964). Moreover, even if there be a valid business purpose for the layoff, a violation of the Act still occurs if the employer's motive is discriminatory. NLRB v. Bedford-Nugent Corp., 379 F.2d 528, 529 (7th Cir. 1967); NLRB v. American Casting Service Inc., 365 F.2d 168, 174 (7th Cir. 1966). Considering this along with the evidence in the record as a whole, we conclude that there is substantial support in the record for the findings of the Board.

The more difficult question here concerns whether the Company's conduct at its Atlanta, Georgia and Jackson, Mississippi facilities was properly before the Board. The chronology of this case shows that on January 27, 1970, the Chicago teamsters local filed an unfair labor practice charge against the respondent alleging violations of Sections 8(a)(1), (3) and (5) of the Act at the Chicago terminal. The Regional Director issued a complaint and notice of hearing on September 11, 1970. Thereafter, on October 28, 1970, an amendment to the original complaint, which added additional Chicago employees, was filed. Finally, on November 12, 1970, a further amendment was filed, alleging that the company violated Sections 8(a)(3) and (1) of the Act by laying off and discharging certain employees at its Atlanta and Jackson terminals. Inasmuch as the Atlanta and Jackson incidents were not mentioned in the original charge filed with the Board and occurred more than six months prior to the filing of the amended complaint, the respondent maintains that Section 10(b) of the Act forecloses any consideration

denied, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed. 2d 56 (1970); NLRB v. Braswell Motor Freight Lines, Inc., 386 F.2d 190 (5th Cir. 1967).

by the Board of the Atlanta and Jackson incidents.[3]

■ It has long been recognized that this section of the Act prevents the Board from filing a complaint on its own initiative. National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940); NLRB v. Kohler Company, 220 F.2d 3, 7 (7th Cir. 1955). Recognizing that a charge is not a complaint but is rather an administrative device for triggering the Board's investigatory process, it has also been held that Section 10(b) is to be broadly construed so as to permit the Board to include in its complaint any matter of the same general nature as that asserted in the charge. NLRB v. Kohler Company, 220 F.2d 3, 6 (7th Cir. 1955) and the cases therein cited.

With respect to the limitations imposed upon the authority of the Board by reason of Section 10(b), the Supreme Court has stated:

"Once its jurisdiction is invoked the Board must be left free to make full inquiry under its broad investigatory power in order properly to discharge the duty of protecting public rights which Congress has imposed upon it. There can be no justification for confining such an inquiry to the precise particularization of a charge." Labor Board v. Fant Milling Co., 360 U.S. 301, 308, 79 S.Ct. 1179, 1183, 3 L.Ed. 2d 1243 (1959).

Relying upon its holding in National Licorice Co., *supra*, the Supreme Court went on to rule in *Fant Milling* that the Board had the authority to deal with unfair labor practices which are related to or grow out of those alleged in the original charge. This Circuit's formulation of the rule expressed in *National Licorice Co.* is that "so long as the Board entered the controversy pursuant to a formal charge, it may allege whatever it finds to be a part of that controversy." NLRB v. Kohler Company, 220 F.2d 3, 7 (7th Cir. 1955).

■ The record here reveals a sufficient nexus between the Chicago conduct mentioned in the original charge and the Atlanta and Jackson conduct alleged in the complaint so that the Board was not precluded by Section 10(b) from considering the Atlanta and Jackson allegations. The practices complained of all occurred within the same general time period, a one to two month span of time. Although different locals were involved at each location, they were all members of the International Brotherhood of Teamsters. When the testimony concerning the specific unfair labor practices is viewed in the context of the respondent's past relationship with the teamsters, it is clear that the company's conduct at the three locations was part of an overall plan to resist organization by the Teamsters. Too, the specific allegations in the complaint with respect to the Atlanta and Jackson terminals were of the same class and character as those set out in the original charge. Thus, we conclude that the respondent's conduct at its Atlanta and Jackson terminals was properly before the Board.

Accordingly, the order of the Board will be enforced.

Order enforced.

STEVENS, Circuit Judge (dissenting).

The complaint, as finally amended on November 12, 1970, alleged that respond-

3. Section 10(b) of the Act provides in pertinent part:

"Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect and containing a notice of hearing before the Board or a member thereof, before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided*, that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made. . . . "

ent had refused to bargain with Local 710 at its Chicago terminal, and had unlawfully discharged 11 employees in Chicago, Illinois, 13 employees in Atlanta, Georgia, and 9 employees in Jackson, Mississippi. In an 112 page decision, the Trial Examiner reviewed in detail the relevant facts about each of those 33 employees and concluded that with respect to 20 of them the evidence was sufficient and with respect to 13 it was not. He ordered the company to bargain with Local 710 in Chicago and to reinstate 10 employees at the Chicago terminal, 9 employees at the Atlanta terminal, and 1 at Jackson.

The charge was filed on January 27, 1970, by Local 710, which represented employees in the Chicago bargaining unit. That local had no jurisdiction over Atlanta or Jackson and, as far as I can determine, no interest whatsoever in the fate of the Atlanta or Jackson employees. They were not represented by any union for purposes of bargaining with the company or by any charging party for purposes of this litigation.

The discharges in Atlanta and Jackson occurred prior to the filing of the Chicago charge. The holding in Labor Board v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243, is therefore inapplicable.[1] Indeed, even the broad language of that opinion is inapplicable since it cannot be fairly said that the Jackson and Atlanta incidents grew out of the conduct alleged in the charge while the proceeding was pending

before the Board.[2] Cf. International Union, U. M. W. v. N. L. R. B., 112 U.S. App.D.C. 60, 299 F.2d 441, 443–444 (1962).

Exactly when one alleged unfair labor practice should be considered sufficiently "related" to another to permit one charge to support two Board complaints—or perhaps I should say, two counts in one complaint—is unclear. It does not seem to me that the fact that the same company, or even the same executive of that company, was involved in both transactions should be sufficient to supply the nexus. And, of course, neither uncouth language nor a consistent antiunion purpose should be controlling; for at least the latter can always be alleged and I would suppose the Board's jurisdiction should be tested by the General Counsel's allegations rather than his proof.

In my judgment it seems more reasonable to focus on the employees' interest in the proceedings. If all of the allegations involved the same bargaining unit, I would assume that a wide variety of apparently separate transactions could appropriately be included in a single complaint based on a charge filed by a member of that unit. However, if the statutory requirement of a charge is to be meaningful, it does not seem to me that a charge filed by a Chicago local should be sufficient to authorize a nationwide investigation of all layoffs within the recent past. I do not reach the question whether it would be wise policy to authorize such broad investiga-

1. In *Fant Milling*, the Court quoted the following statement from its earlier opinion in National Licorice Co. v. Labor Board, 309 U. S. 350, 357, 60 S.Ct. 569, 574, 84 L.Ed. 799:
    "It is unnecessary for us to consider now how far the statutory requirement of a charge as a condition precedent to a complaint excludes from the subsequent proceedings matters existing when the charge was filed, but not included in it. Whatever restrictions the requirements of a charge may be thought to place upon subsequent proceedings by the Board, we can find no warrant in the language or purposes of the Act for saying that it precludes the Board from dealing adequately with unfair labor practices which are related to those alleged in the charge

and which grow out of them while the proceeding is pending before the Board." See 360 U.S. at 306–307, 79 S.Ct. 1179, 1182. The dispute in *Fant Milling*, like that in *National Licorice Co.*, related to events subsequent to the filing of the charge.

2. After quoting from *National Licorice*, in *Fant Milling* the Court stated:
    "In the present case, as in *National Licorice*, the unilateral wage increase was 'of the same class of violations as those set up in the charge . . . . ' The wage increase was 'related to' the conduct alleged in the charge and developed as one aspect of that conduct 'while the proceeding [was] pending before the Board.'" 360 U.S. at 307, 79 S.Ct. at 1183.

tory powers for the Board. I simply am not persuaded that Congress has yet executed that "carte blanche." [3] I therefore respectfully dissent.

---

3. In the final paragraph of its opinion in *Fant Milling*, the Court stated:
   "What has been said is not to imply that the Board is, in the words of the Court of Appeals, to be left '*carte blanche* to expand the charge as they might please, or to ignore it altogether.' 258 F.2d [851, 5 Cir.], at 856. Here we hold only that the Board is not precluded from 'dealing adequately with unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board.' National Licorice Co. v. Labor Board, 309 U.S. 350, at 369 [60 S.Ct. 569, 84 L.Ed. 799]." 360 U.S. at 309, 79 S.Ct. at 1184.