**LOTUS SUITES, INC., d/b/a Embassy Suites Resort, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 93–1052.

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1994.

Decided Aug. 23, 1994.

966 n. 4.

Jared H. Jossem, Honolulu, HI, argued the cause for petitioner. With him on the briefs was Marshall Babson, Washington, DC.

Robert J. Englehart, Atty., National Labor Relations Board, Washington, DC, argued the cause for respondent. With him on the brief were Linda Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Linda Dreeben, Supervising Atty., National Labor Relations Board, Washington, DC.

Before SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Lotus Suites, Inc. petitions for review, and the National Labor Relations Board petitions for enforcement, of a Board order directing Lotus Suites to cease and desist from activity in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, and requiring Lotus Suites to post a remedial notice to its employees. We find that the Board lacked jurisdiction over the complaint because the charge upon which it was based was devoid of factual specificity; accordingly we grant Lotus Suites' petition for review and deny the Board's cross-petition for enforcement.

## I.  Background

Lotus Suites opened an Embassy Suites Resort hotel at Kaanapali on the island of Maui, Hawaii in December 1988.  Two unions launched representation campaigns even before the resort formally opened, and the NLRB directed that an election be held on April 21, 1989.  One of the unions subsequently withdrew, leaving only International Longshoremen's and Warehousemen's Union, Local 142, AFL–CIO, contending for the right to represent the employees of the new hotel.  Local 142 received 61 votes in the election, but 154 ballots were cast against union representation.  Local 142 then filed several objections to the election based upon the Employer's conduct between December 6, 1988 and the election; the Board scheduled a hearing for August 22, 1989.

On August 11, 1989 Local 142 filed a boilerplate unfair labor practice charge alleging violations of §§ 8(a)(3) and 8(a)(1) of the Act respectively:

Within the last six months, and thereafter, the above-named Employer, in order to

·discourage membership in a labor organization, discriminated in regard to the hire and tenure of employment and to the terms and conditions of employment of its full-time and regular part-time employees.

Within the last six months, and thereafter, the above-named Employer, by the above and other acts, interfered with, restrained, and coerced its employees in the exercise of their rights as guaranteed by Section 7 of the Act.

The Regional Director of the NLRB then postponed the hearing in the representation case, conducted an investigation, and on September 29 issued an unfair labor practice complaint alleging six specific violations of § 8(a)(1), as follows:

6. (a) Respondent, acting through [Rana] Linmark, [a Supervisor] at Respondent's facility:

(i) In March or April of 1989, implied that the Union was preventing Respondent from granting a pay raise.

(ii) On or about April 19, 1989, created an impression among its employees that their union activities were under surveillance by Respondent.

(b) On or about April 19, 1989, Respondent, acting through [Todd] Teske, [a Supervisor] at Respondent's facility:

(i) implied that employees' union activities were under surveillance;

(ii) threatened to reduce employee amenities if the Union won the election;

(iii) impliedly promised a 7 percent pay raise if the Union lost the election, and no raise if the Union won the election.

(c) On or about May 3, 1989, Respondent instituted a wage increase and bonus effective May 16, 1989, in order to discourage support for the Union.

The Regional Director ordered that the unfair labor practice case be consolidated with the representation case and that a hearing be held. An Administrative Law Judge denied Lotus Suites' motion to dismiss the complaint on the ground that the general allegations in the charge were insufficient to support the particularized violations alleged in the complaint. After hearing evidence the ALJ sustained some and recommended over-ruling other objections to the election, and concluded that Lotus Suites had violated § 8(a)(1) by threatening to withhold a 7% general pay increase if the Union won the election.

A divided panel of the Board again refused to dismiss the complaint, affirmed the ALJ's conclusion that the Employer had violated § 8(a)(1), and reinstated some of the Union's objections to the election. *Lotus Suites, Inc., d/b/a Embassy Suites Resort and International Longshoremen's and Warehousemen's Union, Local 142, AFL–CIO,* 309 NLRB 1313, 1315, 1316 (1992). The Board ordered Lotus Suites to cease and desist from the unlawful conduct found, and from interfering with, restraining, or coercing employees in the exercise of their § 7 rights, and directed Lotus Suites to post a remedial order explaining the employees' § 7 rights and delineating their Employer's obligation not to interfere with those rights. *Id.* at 1317. The Board also remanded the case to the Regional Director to conduct a second election. *Id.*

## II. Analysis

Lotus Suites urges that the Board lacked jurisdiction over the Union's charge that it violated § 8(a)(1) because the charge was mere boilerplate unsupported by any specific factual allegations. The gravamen of the Employer's argument is that if such a barebones charge confers jurisdiction upon the Board, then the Board is effectively free to launch an unfair labor practice case sua sponte, which the Act forbids.

Section 10(b) of the NLRA provides that "Whenever it is charged that any person has engaged in or is engaging in any ... unfair labor practice, the Board ... shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect." 29 U.S.C. § 160(b). Once a charge is filed, "the responsibility of making th[e] inquiry and framing the issues in the case is one that Congress has imposed upon the Board, not the charging party." *NLRB v. Fant Milling Co.,* 360 U.S. 301, 307, 79 S.Ct. 1179, 1183, 3 L.Ed.2d 1243 (1959). The Board acknowledges that it is not allowed to initiate its own investigation or to issue a

complaint on its own initiative, but that it must await the filing of a charge. The Board argues, nonetheless, that it is entitled to deference in its interpretation of § 10(b) and that it "has long held that where the charging party broadly alleged violation of Section 8(a)(1) of the Act, the Board can consider complaint allegations of particular violations of Section 8(a)(1)."

■ Although the General Counsel is not "confine[d] ... in its inquiry and in framing the complaint to the specific matters alleged in the charge," *Fant Milling*, 360 U.S. at 307, 79 S.Ct. at 1183, the Supreme Court has noted that when the Board issues a complaint, it does not have *"carte blanche* to expand the charge as [it may] please, or to ignore it altogether." *Id.* at 309, 79 S.Ct. at 1184. Therefore, if in a complaint "the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge." *G.W. Galloway Co. v. NLRB*, 856 F.2d 275, 280 (D.C.Cir.1988). In *Galloway* we held that the Board exceeded its authority when it issued a complaint alleging that an employer had threatened to terminate employees picketing in front of its plant, whereas the underlying charge had alleged only that the employer discharged an employee for engaging in protected activities unrelated to the picketing. *Id.* at 281.

■ In *Nickles Bakery of Indiana*, 296 NLRB 927, 928 (1989), the Board explicitly adopted our reasoning in *Galloway*. Indeed, overruling one of two contradictory lines of prior case law, the Board held that to allow the preprinted legend at the bottom of the charge form—"By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act"—"to support unrelated § 8(a)(1) complaint allegations contravenes § 10(b)'s mandate that the Board 'not originate complaints on its own initiative.'" *Id.* The Board therefore adopted a "uniform requirement in all § 8(a) cases that a complaint allegation be factually related to the allegation in the underlying charge." *Id.* In order to assay whether a complaint is factually

related to the allegations of the underlying charge, the Board specifically adopted the three-part test advanced in *Redd–I, Inc.*, 290 NLRB 1115 (1988):

(1) "[T]he Board will look at whether the ... allegations involve the same legal theory as the allegations in the ... charge."

(2) "[T]he Board will look at whether the ... allegations arise from the same factual circumstances or sequence of events as the ... charge."

(3) "[F]inally, the Board may look at whether a respondent would raise similar defenses to both allegations."

*Id.* at 928. (We recently accepted this test pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), as "a permissible interpretation of § 10(b)." *Drug Plastics & Glass Co., Inc. v. NLRB*, 30 F.3d 169, 172–73 (D.C.Cir.1994).) Applying this test in *Nickles Bakery*, the Board held that a charge alleging that an employer violated § 8(a)(3) by discriminatorily disciplining a union adherent could not support a complaint alleging that the employer maintained an unlawful no solicitation rule in violation of § 8(a)(1). 296 NLRB at 929.

■ The complaint in this case cannot possibly meet the *Nickles Bakery* standard that "the complaint allegation be factually related to the allegation in the underlying charge" because the underlying charge alleges no facts. As Chairman Stephens stated in his dissent to the Board's decision, "A fortiori, when the charge contains no factual allegations at all, as in the instant case, there can be no nexus and a complaint cannot properly issue." 309 NLRB at 1317. We agree.

An undaunted Board argues that its decision in this case is not inconsistent with *Galloway* or *Nickles Bakery* because in those cases the complaint rested only upon the preprinted language on the charge form, whereas in this case, the Union typed the allegations on the charge form. (This distinction calls to mind Truman Capote's remark about Jack Kerouac's book *On the Road:* "That is not writing—it's typing.") Therefore, we are told, the Board complied with *Galloway's* requirement that the "agen-

cy ... not act[ ] on its own initiative, but instead ... tailor[ ] its 'activities to those matters shown to be of concern' to the charging party." *Galloway,* 856 F.2d at 279. What, pray, were the matters of concern to the Union? Why, any violations of § 8(a)(1) that the Board might turn up in its investigation. Nothing more specific appears in the charge, anyway. It hardly matters who filled in the blank space on the charge form if the box remains so lacking in content that it is not possible sensibly to apply the test of "substantial relation" between the factual allegations in the charge and those in the complaint. Indeed, if the Board's point were accepted, then a charging party could, in effect, cause the Board to do what the Congress prohibited it from doing, *viz.,* embarking upon an unbounded inquiry into any and all possible violations of the Act.

The Board also claims that a charge no less vacuous than the one at issue in this case supported the complaint in *Fant Milling.* In that case, the § 8(a)(5) charge stated that:

> On or about November 20, 1953, [the Employer], by its officers, agents and employees, refused to bargain collectively with the authorized agents of American Federation of Grain Millers, AFL, chosen by a majority of its employees at its plant to represent them for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment.

*NLRB v. Fant Milling Co.,* 258 F.2d 851, 854 n. 6 (5th Cir.1958) *rev'd, NLRB v. Fant Milling Co.,* 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959). The charge in *Fant Milling* did allege that the violation of § 8(a)(5) occurred on a specific date, which was more information than the Union provided in this case, but, more important, the factual sufficiency of the § 8(a)(5) charge was not at issue in *Fant Milling;* the question presented was whether the Board could issue a complaint citing an unfair labor practice that occurred after the charge upon which the complaint was based had been filed. Therefore it is not significant that the Court did not disapprove of the scanty charge.

### III. Conclusion

The Board was without authority to initiate an investigation and issue a complaint in this case based upon an unfair labor practice charge containing only a boilerplate allegation that the Employer violated § 8(a)(1) and utterly lacking in factual specificity. Our decision should not be thought to derogate from the Board's authority to "include allegations in the complaint that are not specifically asserted in the charge." *Galloway,* 856 F.2d at 280. To allow the Board to issue a complaint based upon a charge containing only a boilerplate § 8(a)(1) allegation, however, unbounded by any specific facts, is "tantamount to allowing the Board to enlarge its jurisdiction beyond that given it by Congress." *Id.* at 279. Because the Board has failed to (nor could it) establish a sufficient factual connection between the general terms of the charge and the specific allegations of the complaint, the Board's order must be set aside.

*Review granted.*