**DRUG PLASTICS & GLASS CO., INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD.**

**No. 93–1013.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1994.

Decided Aug. 5, 1994.

---

Aaron C.F. Finkbiner, III, Philadelphia, PA, argued the cause for petitioner. Also appearing on the briefs was Paul D. Snitzer, Philadelphia, PA. Frank J. Eisenhart, Washington, DC, entered an appearance.

David S. Habenstreit, Attorney, National Labor Relations Board, Washington, DC, argued the cause for respondent. Also appearing on the brief were Linda Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Linda Dreeben, Supervisory Atty., and Deborah E. Shrager, Attorney, National Labor Relations Board, Washington, DC.

Before: MIKVA, Chief Judge, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

Dissenting opinion filed by Circuit Judge SENTELLE.

MIKVA, Chief Judge:

An employer challenges an order of the National Labor Relations Board ("Board") finding that the employer committed unfair labor practices. Petitioner alleges that the General Counsel's complaint exceeded the scope of the allegations contained in the Union's charge, and that the allegations in the complaint were therefore time-barred under § 10(b) of the National Labor Relations Act ("NLRA"). We think a "significant factual relationship" exists between the charged conduct and the additional conduct alleged in the complaint. We therefore deny the petition for review and enforce the Board's order in full.

## I. BACKGROUND

Drug Plastics & Glass Co., Inc. ("Drug Plastics"), a manufacturer of plastic bottles and other containers in Boyertown, Pennsylvania, was the subject of an incipient (and unsuccessful) union organizing campaign in early 1991. On July 15, 1991, the union, United Rubber, Cork, Linoleum and Plastic Workers of America, District No. 1 ("Union"), filed an unfair labor practice charge with the Board. That charge read as follows:

The above named employer unjustly terminated Allen Rich Matthews because of

his Union activities and support of the Union effort in the above named plant.

Allen Rich Matthews was discharged on or around April 26, 1991.

Pursuant to the charge, the Board's General Counsel conducted an investigation. On September 30, 1991, the General Counsel issued a complaint, alleging violations of NLRA §§ 8(a)(3) and 8(a)(1), 29 U.S.C. §§ 158(a)(3), (1), in the discharge of Allen Matthews, and also alleging § 8(a)(1) violations for other conduct designed to discourage the organizing campaign. The relevant sections of the NLRA read:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [NLRA § 7, 29 U.S.C. § 157];

. . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . .

29 U.S.C. §§ 158(a)(1), (3).

Specifically, the complaint alleged that (1) Drug Plastic's Vice President, Glenn Forte, had solicited the employees' complaints and grievances, informed them that he knew there was talk about a union, and promised them improved terms and conditions of employment; (2) Assistant Vice President John Rogers had threatened employees with reprisals if they signed union authorization cards; (3) President Fred Beisicker had threatened employees with plant closure in the event of unionization; (4) Supervisor Tim Matthews had also threatened employees with plant closure; (5) Supervisor Bill Mellen had told an employee that employees' union activities and discussions were being monitored and had threatened to discharge that employee if he engaged in union activity; (6) the company had instituted a wage increase; and (7) the company had discharged the employee, Allen Matthews, because of his support for the Union, in violation of §§ 8(a)(3) and (1), as alleged in the original charge. Before the Administrative Law Judge ("ALJ"), the General Counsel presented testimony that Allen Matthews was personally present at all of these events, with the sole exception of Bill Mellen's statements.

With respect to the unlawful discharge allegation originally charged by the Union, Drug Plastics responded that Allen Matthews was properly fired for cause. As to the § 8(a)(1) allegations in the complaint, the company issued a general denial and presented the affirmative defense that the allegations should be dismissed under NLRA § 10(b) because they exceeded the scope of the charge and were time-barred. The company did not present any testimony to refute the substance of the § 8(a)(1) allegations.

After a hearing in March, 1992, an ALJ found that the allegations in the complaint bore a sufficiently close relationship to those in the charge to satisfy the requirements of § 10(b) of the NLRA. He then found that Drug Plastics had committed violations of § 8(a)(1) in the form of Tim Matthews' and Fred Beisicker's plant closure threats, Bill Mellen's discharge threat, and Glenn Forte's solicitation of grievances and threat of surveillance. The ALJ dismissed the remaining allegations in the complaint. Finding that Allen Matthews was discharged for good cause, the ALJ also dismissed the unlawful discharge allegation. The Board affirmed the ALJ's findings in full, including the determination that the allegations in the complaint were properly related to those in the charge. Drug Plastics petitions for review, and the Board cross-applies for enforcement.

## II. DISCUSSION

The only issue for our review is whether the § 8(a)(1) violations were properly alleged in the complaint. The Union's charge alleged only a violation of §§ 8(a)(3) and (1) arising from the firing of Allen Matthews. That allegation reappeared in the complaint, but the ALJ ultimately dismissed it after a hearing on the merits and after discrediting the testimony of witnesses presented by the General Counsel.

The Supreme Court has held that the General Counsel is not bound by the precise contents of the charge in fashioning the com-

plaint. Neither is the General Counsel held to the standard of a private pleading. Although the General Counsel may not begin an investigation without a charge, the charge merely acts as a trigger to the Board's jurisdiction and not as a rigid limit thereon. *NLRB v. Fant Milling Co.*, 360 U.S. 301, 307–08, 79 S.Ct. 1179, 1183–84, 3 L.Ed.2d 1243 (1959). On the other hand, the Act does not confer *carte blanche* authority on the Board to place allegations in the complaint that are entirely unrelated to those in the charge. *Id.* at 309, 79 S.Ct. at 1184. The statutory hook is § 10(b) of the NLRA, which reads, in relevant part:

> Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board ... shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect ... *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof. ...

29 U.S.C. § 160(b). Drug Plastics claims that its violations were unrelated to the allegations in the charge and should not have been included in the complaint; moreover, if Drug Plastics is right about this, then these allegations were time-barred as of the date of the hearing before the ALJ.

■ As a preliminary matter, Drug Plastics argues that we should evaluate the relationship between the charged conduct and the conduct alleged in the complaint based on the ultimate factual findings of the ALJ and Board. Because the ALJ found, and the Board agreed, that no violation arose from the charged conduct (the firing of Allen Matthews), Drug Plastics argues that there could be no factual relationship between that alleged conduct and the § 8(a)(1) allegations contained in the complaint.

We reject this rigid standard. This Court has looked to the General Counsel's *allegations,* not the eventual proof of those allegations, in determining whether a sufficient relationship exists to confer jurisdiction. *See Land Air Delivery, Inc. v. NLRB,* 862 F.2d 354, 360 (D.C.Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 52, 107 L.Ed.2d 21 (1989) ("Because the factual activity alleged in the union's charge in this case was the precise activity that supported the Board's allegations [in the complaint]," the Board had jurisdiction.) (emphasis omitted). *See also NLRB v. Overnite Transp. Co.,* 938 F.2d 815, 821 (7th Cir.1991) ("[T]he two allegations [in the charge and complaint] involved the same legal theory and arose out of the same sequence of events.") (footnotes omitted); *NLRB v. Braswell Motor Freight Lines,* 486 F.2d 743, 747 (7th Cir.1973) (Stevens, J., dissenting) ("I would suppose the Board's jurisdiction should be tested by the General Counsel's allegations rather than his proof."); *Waste Management of Santa Clara Co.,* 308 N.L.R.B. 50, 50 (1992) ("[A] sufficient nexus between charge and complaint is established when all the allegations involve 'part of an overall plan to resist organization.'") (citations omitted). If the proof is insufficient as to one issue properly alleged, that does not deprive the Board of jurisdiction to hear the evidence supporting the complaint's other proper allegations. Any other rule would demolish the Board's jurisdiction over all sorts of meritorious claims, and that deprivation could never be discovered until after a full hearing on the merits—by which time all contemporaneous conduct would be time-barred. The practical result would be to force the General Counsel to request an amended charge for every alleged violation not explicitly enumerated in the original charge. This scenario is plainly at odds with the flexible regime envisioned by *Fant Milling.* We have never adopted such an obstructionist interpretation of § 10(b), and we decline to do so here.

■ Our task in this case, then, is to determine whether each of the allegations in the General Counsel's complaint is a permissible extension of the allegations contained in the Union's charge. The Board has adopted a test that asks whether the allegations in the complaint are "closely related" to those in the charge. *E.g., Harmony Corp.,* 301 N.L.R.B. 578, 578 (1991). In determining whether a "close relationship" exists in a given case, the Board uses a three-part inquiry: whether the allegations rely on the same

or similar legal theory; whether they arose from the same factual situation or sequence of events; and whether the respondent would raise the same or similar defenses to the allegations in the complaint as to those in the charge. *Redd–I, Inc.*, 290 N.L.R.B. 1115, 1118 (1988). Under *Chevron*, we are bound to accept this test as a permissible interpretation of § 10(b). *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We note that, at least in the present case, the second prong of the *Redd–I* test—factual relatedness—is the most contentious and has caused the most confusion in our precedents. We address each of the three prongs in turn.

## A. Legal Theory

■ The Union's charge alleged solely a violation of §§ 8(a)(3) and (1), while the complaint alleged additional § 8(a)(1) violations. But that is nothing new: the Board has held squarely and consistently that the same "closely related" standard applies when these two sections of the Act are involved. *Nickles Bakery of Indiana*, 296 N.L.R.B. 927, 928 (1989). Frequently, the proof of anti-union animus required to establish a § 8(a)(3) violation will consist of threats and promises that by themselves violate § 8(a)(1). *See Van Dyne Crotty Co.*, 297 N.L.R.B. 899, 900 (1990).

That is the General Counsel's argument in this case: the legal theory for the violations is similar because the alleged § 8(a)(3) violation arises out of, and is sought to be proved by (in part), conduct that violates § 8(a)(1). In this case, the connection is particularly clear because Allen Matthews, the fired employee in the charge, was a victim of all but one of the other violations alleged in the complaint. *Cf. Wilson & Sons Heating & Plumbing v. NLRB*, 971 F.2d 758, 763–64 (D.C.Cir.1992) (insufficient evidence of connection between two alleged violations where different employees were involved). The complaint thus passes the "legal theory" test. We turn to the heart of the matter, the "factual relatedness" test.

## B. Factual Relatedness

The Board alleges that all of the § 8(a)(1) violations were part of a single effort to halt a union organizing campaign in early 1991. As such, they were all closely related to each other, and to the firing of Allen Matthews (another part of the same anti-union campaign). In recent years, the Board consistently has held that this "continuing campaign" rationale can be sufficient to prove factual relatedness. *See Waste Management of Santa Clara Co.*, 308 N.L.R.B. 50, 50 & n. 2 (1992); *The Well–Bred Loaf, Inc.*, 303 N.L.R.B. 1016, 1016 n. 1 (1991); *Harmony Corp.*, 301 N.L.R.B. 578, 579 & n. 6 (1991).

In this respect, our case differs meaningfully from *G.W. Galloway Co. v. NLRB*, 856 F.2d 275 (D.C.Cir.1988), in which this Court found an insufficient factual relationship between charged conduct and conduct alleged in the complaint. In *Galloway*, the union's charge alleged that the employer discharged an employee for engaging in protected activities. The General Counsel's complaint made no such allegation; instead, it alleged only that the employer had impermissibly threatened strikers with termination. *Id.* at 276–77. No facts were alleged to link the threats to the employee's discharge, or to link the discharge (which occurred before the strike) to the strike itself. *Id.* at 278 & n. 21. Accordingly, in that case we emphasized that the discharge and threats, as alleged, were *not* "part of a continuing campaign by Galloway against the union." *Id.* at 281. *See also Nickles Bakery*, 296 N.L.R.B. at 928 n. 7 (describing *Galloway* as "a rather atypical situation" for this reason). Indeed, *Galloway* explicitly distinguishes cases from other circuits that *did* find a continuing anti-union campaign—and on facts significantly more attenuated than the ones here. *Galloway*, 856 F.2d at 281 n. 41 (citing, *inter alia*, *NLRB v. Braswell Motor Freight Lines*, 486 F.2d 743 (7th Cir.1973)). Had sufficient facts been alleged, the complaint would have withstood the *Galloway* court's scrutiny.

We think the Board has drawn a reasonable line in this case. When the General Counsel's allegations, viewed as a whole, tie the conduct alleged in the charge to the separate conduct alleged in the complaint as

part of a unified campaign by the employer to discourage unionization, the allegations comply with § 10(b)'s factual relatedness requirement. That standard is met in this case. The charge alleged an unlawful discharge of Allen Matthews. The complaint alleged the same discharge and also six separate § 8(a)(1) violations, all of which are relevant to prove the alleged anti-union animus behind the discharge. Significantly, the same employee, Allen Matthews, was personally subject to all but one of the acts alleged to be part of the same anti-union campaign. And the last alleged violation—the only one not personally involving Allen Matthews—was a discharge threat and threat of surveillance similar to the other § 8(a)(1) violations and was a continuation of the same type of threat to which Mr. Matthews had personally been subjected. Notably, this last threat came soon after the Matthews discharge. Thus, the ALJ found—quite correctly—that the discharge and subsequent threat allegations were closely related because they combined to suggest that Drug Plastics "was disposed to discharge union adherents."

These facts constitute credible allegations of a continuing campaign by Drug Plastics to discourage unionization. Faced with similar allegations, the Board has consistently approved their inclusion in a complaint. *Waste Management,* 308 N.L.R.B. at 50 & n. 2; *The Well–Bred Loaf,* 303 N.L.R.B. at 1016 n. 1; *Harmony Corp.,* 301 N.L.R.B. at 579 & n. 6.

One outlying case gives us some pause. In *Nippondenso Mfg. U.S.A., Inc.,* 299 N.L.R.B. 545 (1990), the Board held that the allegations supporting a "continuing campaign to discourage organization" theory were insufficient to establish a close connection between the charge and the complaint allegations. *Id.* at 545–46 ("[A]part from their relationship to the same organizing campaign, the allegations in the charge and those set forth in the complaint arise from different factual circumstances."). In its more recent opinions, the Board has sought to distinguish *Nippondenso,* essentially confining that case to its facts. *See Waste Management,* 308 N.L.R.B. at 50 n. 5. We suspect—and the Board's attorney all but conceded at oral argument—that the Board no longer approves of the reasoning in *Nippondenso,* although it has not explicitly overruled the case.

But even if *Nippondenso* retains its original vitality, the Board could reasonably find that it does not govern this case. First, *Nippondenso* is distinguishable in that the conduct is less closely related as a factual matter than the conduct in our case. The opinion in *Nippondenso* indicates that the discharged employee was only peripherally subject to the § 8(a)(1) violations alleged in the complaint. 299 N.L.R.B. at 547 (discharged employee witnessed employer remove union literature that she had posted); *id.* at 545 (complaint alleged, *inter alia,* that employer prohibited posting of literature). Thus, as in *Galloway,* there was little evidence linking the discharge to the other violations except that they occurred around the same time and at the same plant.

Second, the ALJ distinguished *Nippondenso* below as a case in which the conduct alleged in the charge was not itself alleged, or even referred to, in the complaint. Thus, he found, "there was no factual connection [in *Nippondenso*] because there was no evidence concerning the discharge." In our case, of course, the General Counsel did allege the charged conduct in the complaint; and, because the same employee who was the victim of the charged conduct was also subject to all but one of the allegations in the complaint, the charge allegation supported the complaint allegations.

We do not hold today that a failure to allege the charged conduct always requires dismissal of the complaint. On the contrary, the Board and at least one circuit have held that allegations factually related to the charge may be included in the complaint even if the charged conduct is not. *See Waste Management,* 308 N.L.R.B. at 50; *NLRB v. Rex Disposables,* 494 F.2d 588, 589–91 (5th Cir.1974). While we need not decide that issue today, we do observe that it is reasonable for the Board to look to whether the charged conduct was alleged in the complaint as some evidence of "close relatedness." Indeed, that is precisely what this court did in *Galloway,* 856 F.2d at 281 (where General Counsel alleged no link be-

tween discharged employee and threatened employees, "in light of the Board's omission of the discharge [charged conduct] from the complaint, it hardly can be argued that the discharge and the threats made to the strikers [alleged in the complaint] were part of a continuing campaign by Galloway against the union"). If the General Counsel investigates a charge and finds no likely violation from the conduct alleged therein, his inclusion of other conduct in a complaint may be evidence—though not necessarily dispositive evidence—that he has overstepped his bounds. In any event, we find that the Board was not bound by *Nippondenso,* and we approve the Board's finding of a sufficient factual relationship.

The dissent implies that today's holding would require a finding of factual relatedness whenever a complaint allegation—predicated on a charge against an employer by one of its employees—involved an unfair labor practice by the employer affecting all of its employees. *See* dis. op. at 171. This is so, according to the dissent, because whichever single employee is the basis of the charge will, like Allen Matthews, necessarily be a victim if the Board alleges that his employer committed an unfair labor practice that affected all of its employees. But the dissent is wrong. The fact that Allen Matthews was personally subject to all but one of the acts alleged by the complaint significantly bolsters, but is not dispositive of, our holding. Here, the Board has alleged violations that were part of an employer's single ongoing effort to halt a union organizing campaign; as such, they were closely related to each other and to the conduct alleged in the charge. Thus, Allen Matthews' presence during those alleged violations is secondary to our conclusion that the General Counsel's allegations sufficiently tie the *employer's conduct* alleged in the charge to the separate *employer conduct* alleged in the complaint. The court's focus is not on Allen Matthews, the employee, but rather on the factual relatedness of the employer conduct alleged in the charge and in the complaint.

### C. Similar Defenses

Finally, although Drug Plastics chose not to defend against the § 8(a)(1) allegations on their merits, it stands to reason that the company would have offered similar defenses against those allegations and the § 8(a)(3) charge. Because we decide whether the complaint allegations are "closely related" to the charge allegation based on the allegations themselves, and not on the proof, *see supra* at 172–173, it does not matter what defenses Drug Plastics actually offered. We ask only whether, from the perspective of the General Counsel when he prepared his complaint, the allegations warrant an expectation that the employer would be likely to raise similar defenses.

In defending against the § 8(a)(3) claim, Drug Plastics had to argue that it was not trying to discourage unionization by firing Allen Matthews. In defending against the § 8(a)(1) claims, Drug Plastics had to argue that it did not threaten or coerce its employees in the exercise of their right to organize. Because the § 8(a)(1) violations can constitute evidence of background hostility to unionization, relevant to the § 8(a)(3) claim, to defend against the § 8(a)(1) claims is to defend against the § 8(a)(3) claim. Thus, all three prongs of the *Redd–I* test support the Board's ruling that the unfair labor practices fell within the scope of the charge.

### III. CONCLUSION

We deny the petition for review and enforce the Board's order. Drug Plastics was found to have committed § 8(a)(1) violations, which were alleged in the complaint and were closely related to the allegations in the charge.

*Enforced.*

SENTELLE, Circuit Judge, dissenting:

The decision in this case depends on the construction and application of section 10(b) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 160(b) (1988). The relevant part of that section reads:

Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board ... shall have power to issue and cause to be served

upon such person a complaint stating the charges in that respect ... *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof. . . .

Until today, this section imposed two limitations on Board authority; after today, I am not sure that it imposes any in this Circuit.

First, the statute on its face and as applied in prior circuit law "obliges [the Board] to await a charge before it may initiate an investigation or issue a complaint." *G.W. Galloway Co. v. NLRB,* 856 F.2d 275, 278 (D.C.Cir.1988). The second limitation is adjunct to the first. Not only may the Board not issue a complaint without the filing of a charge, but "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge. . . ." Under today's opinion, the statute is re-written to add an exception to the limitations reading: "these limitations do not apply where an employee or his representative files a timely but utterly meritless charge that some other unrelated labor practice has occurred." As this new qualification on the limitations writes them out of existence, and is contrary to existing circuit law, I respectfully dissent.

I would briefly restate the factual background offered by my colleagues in the majority. On July 11, 1991, the union representative filed a "Charge Against Employer" alleging, in toto:

The above named employer unjustly terminated Allen Rich Matthews because of his Union activities and support of the Union effort in the above named plant.

Allen Rich Matthews was discharged on or around April 26, 1991.

On September 3, 1991, with that charge as its supposed basis, the Board filed a complaint and notice against Drug Plastics alleging not only the firing of Matthews but also a list of approximately nine other allegations of unfair labor practices, none naming Allen Rich Matthews in any capacity and all occur-

ring more than six months before the filing of the *complaint.*[1]

After a hearing, an Administrative Law Judge ("ALJ") issued an opinion dated May 20, 1992. The ALJ found that on the charge that Matthews was discharged because he "supported and assisted the Union ... the evidence is paltry to nonexistent." ALJ op. at 11. Instead, he found that Matthews was fired for legitimate disciplinary reasons, most particularly that he was smoking near production in drug manufacturing in violation of the "extraordinary steps" that Drug Plastics took to insure that its products were "free from contamination." However, the ALJ also found that Drug Plastics had committed six other acts alleged in the complaint. None of those acts were alleged to have involved Allen Rich Matthews. None were mentioned in the charge. None occurred within six months of the filing of the *complaint.*[2] That would seem to me to end the inquiry and were I writing the opinion of the Court, rather than a dissent, I would stop there.

Under the plain words of the Act and under our decision in *Galloway,* the Board has no authority to investigate uncharged conduct. Granted, the Board is not rigidly bound to the exact language of the charge. The Supreme Court has recognized "that the Board is not precluded from dealing adequately with unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board." *NLRB v. Fant Milling Co.,* 360 U.S. 301, 309, 79 S.Ct. 1179, 1184, 3 L.Ed.2d 1243 (1959) (internal quotation marks and citation omitted). But this does not give the Board "*carte blanche* to expand the charge as they might please, or to ignore it altogether." *Id.* The majority's opinion today gives that *carte blanche.* The majority's claim that "Allen Matthews, the fired employee in the charge, was a victim of all but one of the other violations alleged in the complaint," is true only in the most convoluted and irrelevant sense. That is, the allegations to which the majority re-

---

1. No charge reciting these allegations was ever filed.

2. *See* footnote 1 *supra.*

fers each mention the company's "employees." The majority apparently reasons that since Matthews was an employee, anything involving employees was sufficiently closely related to come within the language of *Fant.* Not only does *Fant* not support this construction, our decision in *Galloway* compels a contrary result.

The *Galloway* case is strikingly parallel to the present facts. In that case, as in this one, the unfair labor practice charge alleged the improper firing of a specific employee for protected union activity. The Board's complaint added allegations concerning general anti-union activity by the same employer against its employees at the same plant. In that case, the claim of relatedness was stronger than this one, as the questionable allegations concerned events only one day earlier than the firing alleged in the charge. We specifically held:

> It cannot be that allegations in a charge and a complaint having no more in common than that they concern the same employer and occur at the same location are sufficiently related to satisfy Section 10(b).

*Galloway,* 856 F.2d at 280.

The supposed "unified campaign" distinction claimed by the majority changes nothing. Granted, the *Galloway* complaint did not allege that the allegations in question were "part of a continuing campaign by [the employer] against the union." Maj. op. at 174 (quoting *Galloway,* 856 F.2d at 281). Not only can I not see that the addition of that language to a complaint would add anything, that language is not in the present complaint either. If its absence was critical to the holding of *Galloway,* which I do not concede, then the same absence would seem to doom the present complaint.

I would suggest to my colleagues in the majority that they read the full sentence quoted in part by them from the dissent of then-Judge Stevens in *NLRB v. Braswell Motor Freight Lines, Inc.,* 486 F.2d 743 (7th Cir.1973). He stated there "[i]t does not seem to me that the fact that the same company, or even the same executive of that company, was involved in both transactions should be sufficient to supply the nexus." More tellingly, he noted that "neither un-

couth language nor a consistent antiunion purpose should be controlling; for at least the latter can always be alleged and I would suppose the Board's jurisdiction should be tested by the General Counsel's allegations rather than his proof." *Id.* at 747.

Indeed, the continuing anti-union animus can always be alleged. Even though here it was not, my colleagues have supplied it for the General Counsel and have held it sufficient. I would not. Therefore, I dissent.

