**DRUG PLASTICS & GLASS COMPANY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 93–1013.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1994.

Decided Jan. 27, 1995.

Jonathan Kane argued the cause, for petitioner. On the briefs, for petitioner were Aaron C.F. Finkbiner, III, and Paul D. Snitzer. Frank J. Eisenhart, James A. Meyers and Maureen L. Hogel entered appearances, for petitioner.

Linda Dreeben, Supervisory Atty., N.L.R.B., argued the cause, for respondent. With her on the brief were Linda Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Deborah E. Shrager, Atty., N.L.R.B. David S. Habenstreit entered an appearance, for respondent.

Before SILBERMAN, SENTELLE, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge ROGERS.

SENTELLE, Circuit Judge:

Drug Plastics & Glass Company ("Drug Plastics") petitions for review of an order of the National Labor Relations Board ("NLRB" or the "Board") remedying unfair labor practices under Section 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) (1988), and the NLRB cross-petitions for enforcement of the order. Drug Plastics contends that the complaint which gave rise to the order exceeded the scope of the allegations in the union's charge,

and thus the allegations in the complaint were untimely under NLRA § 10(b), 29 U.S.C. § 160(b). We previously denied Drug Plastics' petition for review and allowed the cross-petition for enforcement. *Drug Plastics & Glass Co. v. NLRB,* 30 F.3d 169 (D.C.Cir.1994). Upon rehearing, we have come to the conclusion that Drug Plastics is correct in its position that the allegations in the complaint did not bear a "significant factual relationship" to the single allegation in the charge. We therefore grant Drug Plastics' petition for review and deny enforcement of the Board's order.

## I. BACKGROUND

Drug Plastics, a Pennsylvania manufacturer of plastic bottles for pharmaceutical use, discharged employee Allen Matthews in April, 1991, after a company vice-president learned that Matthews had been smoking on the production floor in violation of company policy and that he had failed to attend certain quality control meetings. Prior to Matthews' discharge, in January and February, 1991, petitioner had been the subject of modest, ultimately unsuccessful union organizing activities by the United Rubber, Cork, Linoleum and Plastic Workers of America, District No. 1 (the "Union"), in which the Union failed to convince a single Drug Plastics employee to sign an authorization card.

On July 15, 1991, the Union filed with the NLRB an unfair labor practice charge, alleging the following violation of NLRA §§ 8(a)(1) and 8(a)(3): [1]

> The above named employer unjustly terminated Allen Rich Matthews because of his union activities and support of the Union effort in the above named plant. Allen Rich Matthews was discharged on or around April 26, 1991.

No other allegations were included in the charge.

---

**1.** NLRA § 8(a) provides, in relevant part:
(a) It shall be an unfair labor practice for the employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [NLRA Section 7, 29 U.S.C. § 157]; ...

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....
29 U.S.C. § 158(a) (1988).

Following the Union's filing, the NLRB General Counsel conducted an investigation. On September 30, 1991, the General Counsel issued a complaint, alleging violations of §§ 8(a)(1) and 8(a)(3) arising from Matthews' discharge, and violations of § 8(a)(1) arising from conduct by the company during the union organizing campaign. Specifically, the complaint alleged that (1) in February, 1991, Drug Plastics' Vice President Glenn Forte solicited employees' grievances, thereby promising improved conditions of employment in order to discourage Union support, and created the impression that Union activities were under surveillance; (2) in February, 1991, Assistant Vice President John Rogers threatened employees with unspecified reprisals if they signed Union authorization cards; (3) in February, 1991, Tim Matthews, a supervisor at the plant, threatened two employees with plant closure if the employees unionized; (4) in early April, 1991, Drug Plastics' President Fred Beisicker also threatened employees with plant closure if they unionized; (5) in June, 1991, Bill Mellen, another plant supervisor, threatened to discharge an employee if the employee engaged in union activity and told an employee that the Union's organizing activities were being monitored; (6) in April, 1991, the company instituted a wage increase in order to discourage unionization; and (7) in April, 1991, the company discharged Allen Matthews because of his union activities, as alleged in the original charge.

In March, 1992, the NLRB conducted a hearing before a Board Administrative Law Judge ("ALJ") in Philadelphia, Pennsylvania. Drug Plastics defended its dismissal of Matthews on the grounds that Matthews broke company policy when he smoked on the production floor, failed to attend a "pre-control" meeting required of employees, and exhibited excessive absenteeism during the first three months of 1991. With respect to the separate § 8(a)(1) allegations in the complaint, Drug Plastics entered a general denial and moved for dismissal, arguing that the allegations were time-barred by NLRA § 10(b), which provides:

> Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board ... shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect.... *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and service of a copy thereof....

29 U.S.C. § 160(b). Drug Plastics contended that the Board lacked jurisdiction to act upon the alleged anti-union activities by the company that had occurred in February, 1991. Consequently, Drug Plastics presented no evidence with respect to those allegations.

After the hearing, the NLRB ALJ rejected Drug Plastics' time-bar defense, concluding that the allegations in the complaint bore a sufficiently close relationship to those in the charge to satisfy the timeliness requirements of § 10(b). He found, however, that Allen Matthews had not been active in any Union organizing campaign and that the company discharged him for good cause, thus dismissing the unlawful discharge allegation which formed the basis for the Union charge. With respect to the other allegations, the ALJ concluded that Drug Plastics violated § 8(a)(1) in the plant closure threats by Tim Matthews and Fred Beisicker, the discharge threat by Bill Mellen, and the solicitation of grievances and threats of surveillance by Glenn Forte. All of the remaining allegations were dismissed. Drug Plastics filed exceptions to the ALJ's decision with the NLRB. The NLRB affirmed the ALJ's decision in full. Drug Plastics petitioned this court for review of these decisions under 29 U.S.C. § 160(f), and the Board cross-applied for enforcement. In our original opinion, we granted enforcement to the Board, concluding that it had alleged a sufficient factual nexus between the complaint allegations and the charge allegation. *Drug Plastics & Glass Co. v. NLRB,* 30 F.3d 169 (D.C.Cir. 1994) ("*Drug Plastics I*"). Drug Plastics petitioned for rehearing, and we granted the petition.

## II. DISCUSSION

Drug Plastics' argument is straightforward. Under 29 U.S.C. § 160(b), the Board

may not issue a complaint alleging an unfair labor practice except upon a properly filed charge alleging that such practice occurred within six months prior to the filing and service of the charge. Of the numerous allegations in the complaint against Drug Plastics, only the allegation concerning Allen Matthews met that criteria. Therefore, petitioner argues, the Board had no jurisdiction to pass on the other allegations. The Board does not dispute the basic law as stated by the petitioner but responds that it and the General Counsel, who acts for the Board in the investigation of charges and prosecution of complaints, may investigate and complain beyond the actual events in the charge "in order properly to discharge the duty of protecting public rights which Congress has imposed upon it." *NLRB v. Fant Milling Co.,* 360 U.S. 301, 308, 79 S.Ct. 1179, 1183–84, 3 L.Ed.2d 1243 (1959). That is, it must be "free to make full inquiry under its broad investigatory power." *Id.*

■ But *Fant Milling* does not give the Board "*carte blanche* to expand the charge as [it] might please, or to ignore it altogether." *Id.* at 309, 79 S.Ct. at 1184. The Supreme Court in *Fant Milling* expressly "h[e]ld only that the Board is not precluded from 'dealing adequately with unfair labor practices *which are related to those alleged in the charge and which grow out of them* while the proceeding is pending before the Board.'" *Id.* (emphasis added) (quoting *National Licorice Co. v. NLRB,* 309 U.S. 350, 369, 60 S.Ct. 569, 579, 84 L.Ed. 799 (1940)). Thus, as we noted in *G.W. Galloway Co. v. NLRB,* 856 F.2d 275 (D.C.Cir.1988), "[W]hen the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a *significant factual affiliation* with the activity alleged in the charge." *Id.* at 280 (emphasis added).

The *Galloway* case is strikingly parallel to the present facts. In that case, as in this one, the unfair labor practice charge alleged the improper firing of a specific employee for protected union activity. The Board's complaint added allegations concerning general anti-union activity by the same employer against its employees at the same plant. *Id.* at 277. In that case, the claim of relatedness was stronger than this one, as the questionable allegations concerned events only one day earlier than the firing alleged in the charge, but we specifically held:

> It cannot be that allegations in a charge and a complaint having no more in common than that they concern the same employer and occur at the same location are sufficiently related to satisfy Section 10(b).

*Galloway,* 856 F.2d at 280.

■ Nothing offered by the Board in its opinion or even in its defense before this court establishes the "significant factual relation" required by *Galloway. See Galloway,* 856 F.2d at 280. In fact, the only relationship found by the Board was that all of the events underlying the allegations were in response to the same "anti-union campaign," and that Matthews had been subjected to some of the alleged discriminatory statements. *Drug Plastics & Glass Co.,* 309 NLRB 1306, 1306 n. 2 (1992). The General Counsel's complaint, however, makes no mention whatsoever of Matthews, except in the single allegation from the charge. At our first hearing, when it was pointed out to the Board that the evidence did not support the allegation of that single count, the Board urged, and we agreed, that we should view the relatedness of the charge and the complaint at the time of the allegations. On this one point, the original panel was unanimous. *See Drug Plastics I,* 30 F.3d at 172, 177. Both the majority and the dissent quoted with approval from the dissent of then-Judge Stevens in *NLRB v. Braswell Motor Freight Lines, Inc.,* 486 F.2d 743 (7th Cir.1973), that "I would suppose the Board's jurisdiction should be tested by the General Counsel's allegations rather than his proof." The difficulty for the Board in this case is that this viewing as of the time of the allegations reveals no factual relatedness between the allegation in the charge and the additional allegations in the complaint. The Board alleged none. We stand by our holding in the original opinion in this case that the relatedness is determined as of the time of allegation.

■ As in *Galloway,* then, the only real factual connection between the charge allegations and the complaint allegations is that

they occurred "during the same time period." *Galloway* found such a mere chronological relationship to be insufficient to support a "significant factual affiliation." 856 F.2d at 281. Thus, under our reasoning in *Galloway,* the Board has not alleged adequate relatedness.

■ The Board applied our *Galloway* reasoning in *Nickels Bakery of Indiana, Inc.,* 296 NLRB 927, 928 (1989), adopting a three-part test for whether complaint allegations are "closely related" to charge allegations. Under *Nickels Bakery,* the Board looks to whether a complaint allegation (1) involves the same legal theory as the charge allegation, (2) arises from the same factual circumstances or sequence of events as the charge allegation, and (3) raises similar defenses as the charge allegation. *Id.* Pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), we defer to this test as a permissible interpretation of § 10(b). *See Lotus Suites, Inc. v. NLRB,* 32 F.3d 588, 591 (D.C.Cir.1994). But deferring to the test does not mean that we must affirm the Board in this case. *Nickels Bakery* does not support the Board's conclusion, and *Galloway* dictates its reversal.

The only justifications offered in the decision of the administrative law judge adopted by the Board for the relatedness of the allegations in the complaint and the single allegation in the charge is that they "arise out of the same alleged anti-union campaign," and that they both bear on anti-union animus. *Drug Plastics & Glass Co.,* 1992 WL 394663, at *5, 1992 NLRB LEXIS 644, at *9. The Board cannot employ this basis as "adequate relatedness" consistent with its decision in *Nippondenso Mfg. U.S.A., Inc.,* 299 NLRB 545 (1990); thus, the Board's action here is an unexplained deviation from its own precedent.

In *Nippondenso,* the only charge on file when the complaint issued alleged that "[o]n or about 4/26/88, the Company discharged an employee" in violation of section 8(a)(3); that "[o]n 2/25/88 the Company was notified, by letter, [the employee] was a member of the In–Plant Organizing Committee;" and that the employer violated section 8(a)(1) "[b]y

the above and other acts...." *Id.* at 545. The complaint alleged several violations of section 8(a)(1) that were not mentioned in the charge, including that (1) a supervisor enforced a rule prohibiting the wearing of buttons other than those issued by the employer, (2) supervisors engaged in disparate treatment of union activity by enforcing a rule prohibiting the posting of literature and then applying the rule disparately to union literature, and (3) supervisors promulgated and enforced other bans on the wearing of union paraphernalia and displaying union insignias. *Id.* The Board analyzed the relatedness of the charge to the complaint under its *Nickels Bakery* three-part framework, and concluded that the General Counsel "ha[d] not established a factual nexus between the allegations in the charge ... and those set forth in the complaint," apart from "their relationship to the same organizing campaign...." *Id.* at 545, 546. Although the General Counsel contended that the allegations were sufficiently linked because they all alleged discriminatory acts against employees "during, and in order to quell, a union campaign," *id.* at 545, the Board concluded that it could not justify "finding the allegations closely related based on legal theory alone." *Id.*

■ In the instant case, the Board found that the complaint allegations were "closely related" to the charge allegation because it found that the allegations "arose out of the Respondent's overall plan to resist the Union ...; that all the allegations occurred after the respondent's acknowledged awareness of the organizing effort ...; that several of the allegations involved statements to employee Matthews ...; and that the 8(a)(1) allegations generally occurred during the same time period as the 8(a)(3) allegation." *Drug Plastics & Glass Co.,* 309 NLRB 1306, 1306 n. 2 (1992). The Board's justification here is no more than a restatement of the one it held inadequate in *Nippondenso.* The only connection left between the charge and complaint is "legal theory," and even then only in the broadest sense, that of "anti-union animus." *Nippondenso* makes clear, though, that allegations which are related by mere legal theory are not "closely related" for

purposes of § 10(b), 299 NLRB at 545–46, and the Board has not since overruled that opinion. In order to diverge from agency precedent, the Board must "suppl[y] a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Cross-Sound Ferry Services, Inc. v. Interstate Commerce Comm'n*, 934 F.2d 327, 329 (D.C.Cir.1991) (citations omitted). The Board provides no explanation for its departure from *Nippondenso*, and we are unable to discern one; consequently, we conclude that the Board's order is contrary to its own precedent.

We find further support for this conclusion in our recent opinion in *Lotus Suites, Inc. v. NLRB*, 32 F.3d 588 (D.C.Cir.1994). In *Lotus Suites*, we held that general boilerplate allegations in a union charge which contained no particular facts could not support specific complaint allegations because the charge allegations were "utterly lacking in factual specificity." *Id.* at 592. Because the charge allegations were general in nature, there could be no "sufficient factual connection" between the charge and the complaint. *Id. Lotus Suites* illustrates the importance of alleging a factual relationship between the charge allegations and the complaint allegations, which the Board failed to do here. Where the Board is unable to connect the allegations in its complaint with the charge allegation, we are unable to find that the Board has jurisdiction over the unrelated complaint allegations.

Because we find that the Board did not have proper jurisdiction over the allegations which supported its finding of § 8(a)(1) violations by Drug Plastics, and because the six-month limitations period of § 10(b) has since elapsed, the order of the Board is vacated, and its enforcement is denied.

ROGERS, Circuit Judge, concurring:

On rehearing, the court reaffirms that the appropriate time for determining the requisite relatedness of the complaint and charge allegations is at the time the complaint is filed. In so doing, the court also emphasizes

the perils for the Board of relying on boilerplate language, albeit this time with regard to the complaint in addition to the charge. *Cf. Lotus Suites, Inc. v. NLRB*, 32 F.3d 588, 592 (D.C.Cir.1994); *G.W. Galloway Co. v. NLRB*, 856 F.2d 275, 278 (D.C.Cir.1988). Absent allegations on the face of the complaint that make apparent their factual relationship to the allegations in a timely charge, the court holds that the Board's decision in *Nippondenso Mfg. U.S.A., Inc.*, 299 N.L.R.B. 545 (1990), bars it from relying on legal theory alone to link untimely complaint allegations.

Before the original panel, the Board's counsel "all but conceded" that the Board no longer approves of its reasoning in *Nippondenso. Drug Plastics & Glass Co. v. NLRB*, 30 F.3d 169, 174 (D.C.Cir.1994) (*Drug Plastics I*). New counsel for the Board candidly acknowledged on rehearing that *Nippondenso* is alive and well but asserted that it is distinguishable. Such distinctions as are urged—*see id.* (discharged employee in *Nippondenso* was only peripherally subject to § 8(a)(1) violations alleged in the complaint, and the complaint did not refer to charge conduct)—however, do not substitute for a statement in the complaint indicating the requisite nexus between its factual allegations and those in the charge. *See Galloway*, 856 F.2d at 280 (requiring a "significant factual affiliation" between complaint and charge allegations); *Nippondenso*, 299 N.L.R.B. at 545. The charge refers only to Matthews' discharge and his union activities; it neither alleges a pattern of anti-union activities by the employer nor that Matthews' discharge was part of such activities. The complaint, in turn, while including the charge allegation regarding Matthews' discharge, does not allege that Matthews' discharge was related to the conduct that is the basis for the added statutory violations. Its boilerplate allegations—Complaint paragraphs 12 and 13—assert that each of the acts complained of constituted a statutory violation; they do not indicate that the charge acts and added complaint acts are related to each other.[1]

Missing from the charge and complaint is the factual relatedness required by § 10(b),

---

1. The one possible exception is in Paragraph 13, referring to both Matthews' discharge (Paragraph 11) and the wage increase complaint allegation (Paragraph 10). But, the Board dis-

*see* 29 U.S.C. § 160(b) (1988), that is present, for example, in the Board's post-*Nipponden-so* decision in *Waste Management of Santa Clara Co.,* 308 N.L.R.B. 50, 50 & n. 2 (1992).[2] The court does not suggest that the facts as found by the Board fail to show factual relatedness. Indeed, as shown in *Drug Plastics I,* 30 F.3d at 174, Matthews, as an employee, was personally subject to most of the § 8(a)(1) conduct alleged in the complaint. The problem arises because the proper focus for determining § 10(b) factual relatedness is on the allegations in the complaint, and the complaint here does not attempt to allege the factual relatedness of its allegations to those in the charge. Under *Nippondenso,* the vacuum cannot be filled by legal theory. Consequently, notwithstanding inclusion in the instant complaint of the charge allegation regarding Matthews' discharge, the Board may not rely on a relationship between the charge allegations and the complaint allegations that is not apparent in either the charge or the complaint.

It is thus crucial to recognize that this case hinges on a defect in the complaint, rather than on the facts themselves. It may well be that the additional claims in the complaint are sufficiently related to the charge regarding Matthews' discharge in that they were all "part of an overall plan to resist union organization."[3] *Waste Management,* 308 N.L.R.B. at 50 (quoting *Well–Bred Loaf, Inc.,* 303 N.L.R.B. 1016, 1016 n. 1 (1991)).

However, because relatedness must be determined from the face of the charge and complaint, and because those documents in the instant case do not indicate any relationship between the alleged discharge and the additional claims in the complaint, the additional claims are untimely.

---

missed the wage increase allegation and, hence, neither it nor Matthews' discharge are part of the enforcement order at issue.

2. In *Waste Management,*
   [t]he charge consisted of specific allegations of unlawful grants of wage increases and threats of retaliation against employees for their support of the Union; but it referred to these as part of [the employer's] "interfer[ence] with the freedom of the employees to make a fair choice of representation" during "the course of an election campaign...." Although the complaint alleged acts of interference different from those specifically alleged in the charge, the reference in the charge to [the employer's] interference with the particular organizational campaign was sufficient to support the complaint allegations that [the employer] sought to undermine and discourage employee support for the Union by interrogating employees, soliciting grievances and impliedly promising to remedy them, and soliciting employees to campaign against the Union.

308 N.L.R.B. at 50. The Board noted that *Nippondenso* did not compel dismissal of the complaint because in that case "neither the allegations of the charge nor the complaint placed at issue acts that were all part of an overall plan to resist union organization." *Id.* n. 5.

3. To this extent the instant case differs from *Galloway.* While the court points out the close temporal relationship between the charge and complaint allegations in *Galloway,* the additional allegation in the *Galloway* complaint was not factually related to the allegation in the charge, 856 F.2d at 278 & n. 21, because they had no more in common than that they concerned the same employer and occurred at the same location. *Id.* at 280. In the instant case, the allegations were more factually related because they involve the same employee and the same anti-union campaign. However, this factual relatedness is irrelevant to our inquiry because it is not apparent on the face of the charge and the complaint.